**AFFIRM, MODIFY, REVERSE and REMAND; Opinion Filed April 9, 2014.**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-11-01377-CV**

**DAVID W. NOELL, Appellant/Intevenor**

**V.**

**CITY OF CARROLLTON AND CARROLLTON PROPERTY STANDARDS BOARD,**
**Appellants/Appellees**

**CROW-BILLINGSLEY AIR PARK, LTD, HENRY BILLINGSLEY, AND AIR PARK –**
**DALLAS ZONING COMMITTEE, Appellants**
**V.**
**AIR PARK COMMON AREA PRESERVATION ASSOCIATION, CHAD MAISEL,**
**AMY EKLUND, AND DALE BURGDORF, Appellees**

**On Appeal from the 219th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 219-00926-2009**

**OPINION**

Before Justices Bridges, O'Neill, and Lewis
Opinion by Justice O'Neill

This dispute concerns claims by homeowners in a residential "airpark" community against a real estate developer, the zoning committee of the airpark community, and the City of Carrollton in connection with actions that resulted in the City ordering the airpark's airport closed.

Appellees Air Park Common Area Preservation Association, Inc., Dale Burgdorf, Chad Maisel, and Amy Eklund (Homeowners) represent homeowners or own homes in Air Park Dallas, a residential community with a small, privately-owned, public-access airport. After the City of Carrollton annexed a portion of the airport, it passed an ordinance to regulate the airport. The City's Property Standards Board (CPSB) subsequently ordered the airport closed unless Crow-Billingsley Air Park, Ltd., (CBA), the record title owner of the land on which the airport was located, cured numerous violations of the Ordinance it found to exist.

Homeowners sued CBA, CBA's majority owner Henry Billingsley, and the Air Park "Zoning Committee" raising various claims in connection with their failure to comply with the Ordinance, their violation of contractual and fiduciary duties to Homeowners, and their interference with Homeowners' easements to use the airport's landing strip. Homeowners also sued the City and CPSB, challenging the City's interpretation of the Ordinance and the constitutional validity of both the Ordinance and the Order. Noell, who is also a homeowner in Air Park as well as an original developer of Air Park and a minority owner of CBA, raised similar challenges to the Order and Ordinance.

On summary judgment, the trial court determined the Ordinance was "facially valid" but the Order was invalid. In its final judgment, the trial court granted Homeowners declaratory and injunctive relief against the City and CPSB based on these summary judgment rulings. Homeowners claims against the Billingsley appellants were tried to a jury. The trial court rendered judgment in favor of Homeowners on the jury's verdict awarding actual damages on their claims for breach of contract, breach of fiduciary duty, and breach of the Air Park restrictions. The trial court also awarded Homeowners declaratory relief and injunctive relief against the Billingsley appellants, declaring CBA had a duty to maintain the airports' landing

2

strip, which included the duty to operate the airport, requiring CBA to comply with the Ordinance, and prohibiting the Billingsley appellants from interfering with Homeowners' easements.

Noell appeals the partial summary judgment declaring the Ordinance was facially valid. The City appeals the partial summary judgment reversing CPSB's order and granting Homeowners' declaratory and injunctive relief. The Billingsley appellants appeal the trial court's judgment on the jury's verdict awarding actual damages and declaratory and injunctive relief.

For the reasons that follow, we affirm the trial court's judgment invalidating the Order, but reverse the trial court's judgment declaring the Ordinance facially valid. We also reverse the portions of the judgment granting Homeowners declaratory and injunctive relief regarding the Order and the Ordinance, and remand those claims to the trial court for further proceedings consistent with this opinion. We modify, in part, the injunctive relief awarded to Homeowners against CBA. We affirm the judgment in all other respects.

## FACTUAL AND PROCEDURAL BACKGROUND

Noell and his father Milton began the Air Park Dallas development in the 1960s. They marketed Air Park to purchasers as a residential community with its own FAA-approved airport. The community was designed with a landing strip and taxiways, allowing residents to store their personal aircraft in hangers at their homes and giving them direct access to the landing strip. "Business lots" providing aviation services were constructed on the eastside of the landing strip (eastside business lots).

Lots in Air Park were sold pursuant to a "Note and Contract," which provided:

> An aircraft landing area being a minimum of 300 feet wide and 3,000 feet long will at all times be available to the homesites [sic] property owners

3

via taxiways arranged in accordance with said plot filed in Collin County, Map Records. Said landing area will be owned, controlled and maintained by Air Park Associates,[1] their heirs or assignees at no cost to the homeowners for a minimum period of ten years and will continue thereafter until such time as said landing strip might cease to be economically feasible and at which time said strip and taxiways will be donated to the homeowners in exchange for access and usage privileges without charge to the donors except for a proportionate part of the maintenance cost which will be determined by a board of three independent appraisers, if necessary. In the event of discontinuance of use of said landing strip as an aircraft landing area, title to same will revert to the donors, their heirs or assigns.

The document contained "Use and Building Restrictions," which were expressly made part of the agreement and were listed on the reverse side. The restrictions provided for a "Zoning Committee" composed of Noell, his father Milton, and three additional members to be elected by a majority of the lot owners. The restrictions imposed requirements on the property owners and provided the Zoning Committee could enforce certain restrictions where necessary to protect the homeowners. Air Park was in an unincorporated area of Collin County, and the restrictions further provided the Zoning Committee "will act as a governing body with legal authority to make those rulings necessary or call for an election to protect the best interests of the community until an incorporated government can be established."

In 1983, Milton sold an undivided one-half of his interest in Air Park to Henry Billingsley, a sophisticated real-estate developer. It is undisputed that Billingsley purchased this interest as an investment. Milton and Billingsley subsequently transferred all of their interest in Air Park to CBA. The interest included the landing strip, the eastside business lots, as well as some residential lots. After Milton passed away, his interest in CBA went to Noell and Noell's

---

[1] There was testimony at trial that Air Park Associates was a general partnership consisting of Noell and his father Milton. The trial court's judgment is based on its conclusion that CBA is obligated to perform Air Park Associates' duties. Other than the issue raised in their fifth issue, asserting CBA did not expressly assume the obligations in the Note and Contract, the Billingsley appellants fail to address the relevance of Air Park Associates being the party named in the Note and Contract.

4

brother. Billingsley purchased Noell's brother's interest in CBA, giving Billingsley seventy-five percent ownership of CBA. Noell owns the remaining twenty-five percent. During these transactions, the parties agreed the airport property would be leased to Noell for a period of one year and thereafter on a month-to-month basis. Pursuant to that lease, Noell operated the airport, and maintained the landing strip, for over twenty years.

Meanwhile, Billingsley and CBA purchased additional lots in Air Park until, in 2003, they owned sufficient lots to take control of the Zoning Committee. Billingsley then elected himself, his wife, and a long-time Billingsley employee to the committee; Noell remained on the Zoning Committee as a permanent member pursuant to the Air Park Restrictions. After Billingsley obtained control over the Zoning Committee, CBA terminated the Noell lease. Even so, Noell has continued to manage and operate the airport.

In 2007, Billingsley took the first step that would be necessary for CBA to develop the Air Park property and build "Willow Park Village," a proposed residential, retail, and mixed use planned development district. Specifically, Billingsley had the land he sought to develop de-annexed from the City of Hebron.[2] This land included the eastside business lots and a portion of the landing strip, but left a portion of the landing strip in Hebron. Billingsley then approached the City of Carrollton with the development plan for Willow Park Village and requested annexation. In connection with this request, CBA submitted a traffic study, a concept site plan, and an application for "rezoning" for the development. Billingsley also offered to "indemnify"

---

[2] The eastside business lots and the landing strip (but not the residential lots) were annexed into the City of Hebron years earlier. Billingsley explained that the City of Hebron was essentially created to allow people to "warehouse" their property in this growing area of Collin County to prevent annexation by other cities to keep property taxes down until the property was ready to be developed. He stated when the property was ready for development, the property owners would then seek annexation into either Plano, Lewisville, The Colony, or Carrollton, whichever city happened to be adjacent and had the best utilities.

the City for any attorney's fees it incurred as a result of the annexation. The City proceeded with, and approved, the annexation.

With annexation complete, Billingsley began lobbying for passage of an ordinance to regulate the Air Park airport. His efforts were successful, and the City passed the Ordinance. The Ordinance, citing safety concerns, was passed as an amendment to the City Code's nuisance provisions. The Ordinance imposed several requirements on the "owner of the airport," including the requirement that the owner (1) prescribe rules and regulations consistent with "Model Airport Rules and Regulations" published by the Texas Department of Transportation, (2) obtain insurance, and (3) hire an airport manager accredited by the American Association of Airport Executives. The assistant city attorney who drafted the Ordinance admitted it was drafted with the intent that only CBA was the "owner of the airport," and the City intended to exclude Homeowners as owners for purposes of compliance with its provisions. The Ordinance also contained numerous provisions applicable to the eastside business lots.

The Ordinance provided that any violation of its provisions constituted a "nuisance" that could result in CPSB ordering any land, building, structure, or activity be vacated, demolished, discontinued and abated, and further provided any violation was an offense punishable by a fine of up to $2,000 per day for each day the violation was committed, permitted, or continued.

After the Ordinance passed, the City sent several notices of violations to Billingsley concerning CBA's failure to comply with the Ordinance, including violations only the "owner of the airport" could abate, as well as violations on the eastside business lots. The City warned that CBA's failure to cure the violations could result in closure of the airport. As expected, CBA made no effort to abate the violations. Homeowners and Noell, however, did attempt to cure the violations and comply with the Ordinance's requirements. The City would not consider these

6

efforts because they were not tendered by CBA, the "owner of the airport." Homeowners then filed this suit seeking to compel CBA and Billingsley to comply with the Ordinance and to compel the Zoning Committee to enforce restrictive covenants and to compel CBA's compliance with the Ordinance. Noell filed an intervention asserting claims against Homeowners seeking to determine what, if any, rights or obligations he had to comply with the Ordinance.

Meanwhile, during the pendency of this case, the trial court granted Homeowners temporary injunctive relief requiring the Zoning Committee to take all reasonable and necessary steps to bring the airport in compliance with the Ordinance. After it did so, the Zoning Committee also purported to take steps to comply with the Ordinance. These efforts were also ignored by the City because the Zoning Committee was not the "owner of the airport."

The City then determined CBA failed to abate violations of the Ordinance. After a hearing, CPSB found the "building and premises" were dangerous, substandard, dilapidated, unfit for human habitation, and a hazard to the public health and welfare. In a 5 to 4 vote, the CPSB board members ordered the airport closed unless all violations at Air Park were abated within thirty days by "the owner of record that is recognized as legally liable for said property." Homeowners then amended their petition, adding the City and CPSB as parties.[3] They asserted the City's actions violated their rights under chapter 43 of the Local Government Code, which protected their continued use of the annexed property as an airport.[4] They further asserted

---

[3] In their amended petition, Homeowners properly requested a writ of certiorari for review of the board decision. *See* TEX. LOC. GOV'T CODE ANN. § 211.011(a) (West 2008). The trial court granted the writ, directing the CPSB to state any pertinent and material facts showing the grounds for their decision. TEX. LOC. GOV'T CODE ANN. § 211.011(c)(d) (West 2008)

[4] Section 43.002 of the Local Government Code prohibits a City, after annexing an area, from prohibiting a person from continuing to use land in the manner it was being used on the date the annexation proceedings were instituted if such use was legal at the time of annexation. *See* TEX. LOC. GOV'T CODE ANN. § 43.002(a)(1) (West 2008). However, this prohibition does not prevent a municipality from imposing regulations relating to public nuisances. TEX. LOC. GOV'T CODE ANN. § 43.002(c)(4).

CBSP's order should be reversed because its interpretation of the Ordinance, which allowed only CBA to comply with its requirements, was arbitrary, unreasonable, and capricious. Homeowners asserted if CPSB's interpretation was allowed to stand, the Order deprived them of their property rights without due process of law. Noell amended his intervention to assert similar claims against the City and CPSB.

The City and Homeowners filed competing motions for summary judgment on the validity of the Order. The City also filed a motion for summary judgment that the Ordinance was valid as a matter of law. After considering the motions, the trial court determined the Ordinance was valid but the Order was not. A jury trial on Homeowners' remaining claims against the Billingsley appellants followed. After a three-week trial, the jury answered nearly all questions submitted in favor of Homeowners. The jury found, among other things, that Billingsley and the Zoning Committee breached their fiduciary duties to Homeowners, CBA breached its duties to Homeowners by failing to maintain the landing strip, CBA breached the Air Park restrictions, the Zoning Committee failed to enforce those restrictions, and all the Billingsley appellants interfered with the Homeowners' easements on the landing strip. The trial court awarded actual damages and declaratory and injunctive relief, declaring CBA was obligated to operate an airport at Air Park by virtue of its obligation to maintain the landing strip, and generally enjoining CBA from taking any actions that would injure, impair, hinder, harm, or prevent Homeowners' use of the landing strip, and requiring CBA to take numerous actions necessary to comply with the Ordinance if failure to comply would adversely affect the Homeowners' right to use the landing strip. The trial court also granted declaratory and injunctive relief with respect to Homeowners' claims against the City. Specifically, after concluding the Ordinance was facially valid, the trial court invalidated the Order and declared

8

the term "owner" as used in the Ordinance included any person that had an easement to the landing area. The trial court's final judgment also included injunctive relief in favor of Homeowner against the City, requiring the City to allow Homeowners to abate violations of the Ordinance, and to give Homeowners notice of any violations of law that may affect Homeowners continued use of the landing strip. [5] This appeal ensued.

## SUMMARY JUDGMENT

### City's Appeal

We will first consider the City's complaints regarding the trial court's partial summary judgment reversing the Order closing the airport. The City asserts the trial court erred by granting Homeowners' motion for summary judgment and by denying its motion. Homeowners moved for summary judgment on the grounds that the City erroneously interpreted the Ordinance to exclude them as owners for purposes of compliance, or alternatively, if it did not, the Order effected a deprivation of their property rights without due process. They also complained the City relied on alleged violations of the Ordinance that did not concern aviation safety or airport functions as grounds to close the airport.

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). In reviewing a traditional motion for summary judgment, the movant has the burden to demonstrate no genuine issue of material fact exists and it is entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co*., 690 S.W.2d 546, 548-49 (Tex. 1985); *Jespersen v. Sweetwater Ranch Apartments*, 390 S.W.3d 644, 652 (Tex. App—Dallas 2012, no pet.). When both parties move for summary judgment and the trial court grants one motion and denies the other, we review both sides' summary judgment evidence and render the judgment the

---

[5] The trial court granted Noell's motion to sever his claims against the Homeowners and those claims are not before us in this appeal.

9

trial court should have rendered. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). Whether the application of a statute to undisputed facts is unconstitutional or whether a statute is facially unconstitutional is a question of law. *See in re C.P.J.*, 129 S.W.3d 573, 576 (Tex. App.—Dallas 2003, pet. denied); *see also Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 629 (Tex. 1996).

In asserting the trial court erred in reversing the Order, the City seeks to clearly separate Homeowner's constitutional challenges to the Ordinance from our review of the Order. In doing so, it essentially ignores Homeowners' constitutional complaints and relies on a highly deferential standard of review it asserts requires we reverse the trial court and affirm CPSB's Order. Specifically, the City argues that because it could generally regulate airport activity under its police power and because CPSB's conclusion the Ordinance was violated was "reasonable," the Order must be upheld without further analysis. We are unpersuaded. The City's position regarding our review of CPSB's order – if accepted – would virtually insulate CPSB's order from any meaningful constitutional review and ignores the heart of Homeowners complaints concerning the Order.

As a quasi-judicial body, the decisions of a zoning board are subject to appeal before a state district court upon application for a writ of certiorari. See TEX. LOCAL GOV'T CODE § 211.011(a), (b); *Bd. of Adjustment of the City of Corpus Christi v. Flores*, 860 S.W.2d 622, 625 (Tex. App.—Corpus Christi 1993, writ denied). The district court sits only as a court of review, and the only question before it is the legality of the zoning board's order. *City of Alamo Heights v. Boyar*, 158 S.W.3d 545, 549 (Tex.App.—San Antonio 2005, no pet.). To establish that an order is illegal, the party attacking the order must present a "very clear showing of abuse of discretion." *City of San Angelo v. Boehme Bakery*, 144 Tex. 281, 190 S.W.2d 67, 71 (1945). A

10

party is nevertheless entitled to judicial review of administrative actions that adversely affect a vested property right or otherwise violates a constitutional right. *Lamar Corp. v. City of Longview*, 270 S.W.3d 609, 614-15 (Tex. App.—Texarkana 2008, no pet.). If an order deprives a person of vested property rights without due process, the order can be set aside. *See City of Houston v. Carlson*, 393 S.W.3d 350, 361-62 (Tex. App.—Houston [14th Dist.] 2012, no pet); *cf. Stop the Beach Renourishment, Inc. v. Fl. Dep't of Env. Protection*, 560 U.S. 702, 735 (2010) (Kennedy, J., concurring) (stating if a judicial decision, as opposed to an act of the executive or the legislature, eliminates an established property right, the judgment could be set aside as a deprivation of property without due process of law).

A deprivation of property without due process violates the Texas Constitution. *Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 658 (Tex. 2004); *see also Smith v. City of League City*, 338 S.W.3d 114, 127 (Tex. App.—Houston [14th Dist.] 2011, no pet.). A taking of property for public use without just compensation also violates the Texas Constitution. *See* TEX. CONST. art. I, § 17. A government entity may, however, under its police power, abate public nuisances, and such an abatement does not constitute a taking. *See City of Dallas v. Stewart,* 361 S.W.3d 562, 569 (Tex. 2012). But a city may not, under the guise of the police power, arbitrarily interfere with private property or impose unusual or unnecessary regulations on it. *See State of Washington v. Roberge*, 278 U.S. 116, 121 (1928); *see also ex parte Smythe,* 28 S.W.2d 161, 162 (Tex. Crim. App. 1930). Further, to justify a taking based on its police power to abate nuisances, a nuisance must in fact exist. *See Stewart,* 361 S.W.3d at 575-76. Whether such a nuisance exists is a question of law, not of fact, that must be answered based on a "fact-sensitive test of reasonableness." *Id.* Agencies are generally not equipped to

11

make such determinations, which are of direct constitutional import and often require a complex balancing of competing interests. *See id.* at 576-78.

Here, the City's reliance on its general authority to regulate land use under the police power misses the critical question. It is without question that a City has the power to impose regulations on land use. In particular, a City, in the exercise of its police power, has authority to promulgate zoning ordinances regulating the use, and, where necessary or appropriate, to prohibit the use of property for certain purposes in aid of the general welfare, safety and public health and morals of the community. *City of Bellaire v. Lamkin*, 317 S.W.2d 43, 45 (Tex. 1958). But here, the City did not do so. Rather, the City relied upon its power to abate nuisances to permit it to destroy Homeowners' easement rights.

An easement is a property interest protected by the Texas Constitution. *See Houston Lighting & Power Co. v. State,* 925 S.W.2d 312, 315 (Tex. App.—Houston [14th Dist.] 1996, writ denied). Non-compliance with an ordinance does not automatically divest an owner of his property rights or relieve a government entity of the constitutional requirements to provide due process. *See Carlson*, 393 S.W.3d at 358 (Tex. App.—Houston 14th Dist. 2012, no pet.) (procedural due process).

The City does not dispute that, under the Ordinance, Homeowners had no right to notice of violations and no right or opportunity to abate any violations of the Ordinance. Indeed, Homeowners' efforts to cure violations and comply with the Ordinance were admittedly ignored because, according to the City, they were not "owners" of the airport. The Zoning Committees' compliance efforts, which were ordered by the trial court after a temporary injunction hearing, were likewise ignored because it was not an "owner" of the airport. That temporary injunction included findings that (1) Homeowners had a right to use the landing strip and taxiways deriving

12

from "deeds, contracts, restrictive covenants, express easements and an equitable servitude," and (2) the Zoning Committee had jurisdiction over the landing strip. In that injunction, the trial court ordered the Zoning Committee to take all reasonable steps necessary, including enforcement actions, to achieve compliance with the Ordinance, and authorized Homeowners to act on behalf of the Zoning Committee if the Zoning Committee did not do so. The injunction also authorized Homeowners to deal directly with the City to fully resolve or abate any violations of the Ordinance.

At the CPSB hearing, the City maintained the trial court's order "meant nothing" because the City was not (at that time) a party to the action and the injunction did not alter its position as to who was the "owner of the airport." However, CBA and the Zoning Committee *were* parties to the proceedings in the trial court, and the City has acknowledged CBA could authorize another to comply with the ordinance. The City has failed to articulate why the trial court could not authorize the Zoning Committee (which was effectively controlled by CBA) and/or Homeowners to act on CBA's behalf.

Further, although the City urges we must give CPSB deference regarding its determination of the meaning of the term owner, the City acknowledged at the hearing CPSB was not competent to determine the ownership issue. Specifically, the City Attorney argued the issue of whether Homeowners had an "equitable interest" was "too technical [of] a legal issue for [CPSB] to have to decide." CPSB likewise acknowledged its lack of competence to determine the ownership issue in its statement showing the grounds for its order. Specifically, CPSB noted Homeowners claim was "not clear" and was based on legal questions it could not determine. However, CPSB relied on this very determination to order the airport closed destroying

13

Homeowners' property rights without affording Homeowners' either any right to notice or opportunity to comply with the Ordinance's substantive requirements.

Finally, the Order is not valid based on the City's power to abate nuisances. Homeowners complained CPSB ordered the airport closed based on violations at the airport that did not concern aviation safety on the landing strip. Furthermore, Homeowners, Noell, and the Zoning Committee had taken numerous steps to address the City's safety concerns, including hiring an AAAE approved airport manager, drafting rules and regulations for the airport's operation, and obtaining insurance. At the CPSB hearing, the City readily admitted it was "immaterial" whether any violations had been corrected by anyone other than the owner because "[o]bviously you have to take the ordinance as you find it" and the ordinance required the "owner" of the airport to take the steps to bring the airport in compliance. Contrary to the City's suggestion, although it has the power to abate nuisances, it does not have the power to declare or define them, at least to the extent it seeks to utilize a nuisance determination to destroy property rights. In other words, the State may not by declaration transform private property into public property under the police power. *Cf. Lucas v. S. Carolina Coastal Council*, 505 U.S. 1003, 1031 (1992) (explaining that if the government seeks to justify a zoning ordinance that has effect of what would otherwise be a taking under its power to abate nuisances, the government must do more than merely proffer a legislative declaration). Here, the Ordinance allowed CPSB to do just that by purporting to declare that any violation of its provisions, regardless of any actual effect on safety, constituted a nuisance. Because the Order operated to destroy Homeowner's easements, without due process of law, the trial court did not err in reversing the Order.

14

Noell's Appeal

We now turn to Noell's appeal regarding the trial court's summary judgment in favor of the City regarding the facial constitutionality of the Ordinance. We begin by addressing the City's assertion, made for the first time on appeal, that Noell has no standing to bring this appeal. According to the City, Noell failed to prove his standing to challenge the Ordinance because he did not present any summary-judgment evidence of his ownership interest in the property. Although Noell's ownership interest was not disputed below, the City asserts we must nevertheless dismiss Noell's appeal because he failed to present summary judgment proof of this interest.

Standing, as a component of subject-matter jurisdiction, can be raised for the first time on appeal. However, when standing is raised for the first time on appeal, we must consider the entire record. *See John C. Flood of DC, Inc. v. SuperMedia, L.L.C.,* 408 S.W.3d 645, 650 (Tex. App.—Dallas 2013, pet. filed). Here, the record as a whole contains more than enough proof of Noell's standing. Noell not only owns a home in Air Park, he was an original developer of Air Park, is a member of the Zoning Committee, and is a twenty-five percent owner of CBA. Furthermore, even if we are limited to the summary judgment record, there is sufficient proof of Noell's standing to challenge the Ordinance. Specifically, CPSB's Order itself states that Noell was the "minority owner" in the airport. Moreover, there was summary judgment evidence that Noell actually owned all the improvements at the airport.

We conclude Noell has standing to bring this appeal. Turning to the merits, Noell's complaints regarding the Ordinance are generally similar to, and overlap with Homeowners'

15

complaints.[6] In particular, Noell also complained that CPSB's order was arbitrary and capricious because CPSB's interpretation of the Ordinance was incorrect and did not permit him to comply with its provisions. He also asserted if CPSB's interpretation was correct, the Ordinance violated his due process rights. Finally, Noell contended various substantive parts of the Ordinance were unconstitutionally vague.

The City moved for summary judgment asserting the Ordinance was, as a matter of law, a valid exercise of the police power, and the trial court granted its motion. We have previously concluded that CPSB's Order destroying Homeowners' property rights violated their due process rights. As the City readily admits, the face of the Ordinance authorized CPSB to do so. Therefore, for the same reasons that CPSB's Order effected a deprivation of property without due process of law, so too are the provisions of the Ordinance which on their face expressly authorized CPSB to do so. This determination, however, only concerns Noell's complaint that the Ordinance operated to deprive him of his property without due process.

Therefore, we further consider Noell's complaint that the substantive requirements of the Ordinance are unconstitutionally vague. The same rules apply to the construction of municipal ordinances as apply to the construction of statutes. *Mills v. Brown*, 316 S.W.2d 720, 723 (Tex. 1958). When we review a challenge to the constitutionality of a statute, we begin with the presumption that the statute is valid, and the legislature did not act unreasonably or arbitrarily in enacting it. *Lawrence v. State*, 211 S.W.3d 883, 890 (Tex. App—Dallas 2006), *aff'd*, 240 S.W.3d 912 (Tex. Crim. App. 2007). The party challenging the constitutionality of a statute

---

[6] Noell also raises complaints the Ordinance is invalid because it is preempted by Chapter 241 of the Local Government Code. *See generally*, TEX. LOC. GOV'T CODE ANN. § 241.011 (West 2005). Chapter 241 contains comprehensive provisions regarding a City's authority to regulate privately-owned public-access airports. It is undisputed that the City has not attempted to comply with Chapter 241's requirements. The City contends Noell waived these complaints because he did not raise them in his motion for summary judgment. It further asserts Chapter 241 is inapplicable because it only applies to "airport hazards" and does not regulate "airport activity." Because these issues were not raised in the summary judgment proceedings, we do not reach them here.

16

bears the burden of proving the challenged statute is unconstitutional. *Id.* We will uphold a statute if it can be reasonably construed in a manner that will render it constitutional. *Id.*

A statute or ordinance is unconstitutionally vague if the persons regulated by it are exposed to risk or detriment without fair warning or if it invites arbitrary and discriminatory enforcement by its lack of guidance to those charged with its enforcement. *See Comm'n for Lawyer Discipline v. Benton*, 980 S.W.2d 425, 437 (Tex. 1998); *Tex. Liquor Control Bd.v. Attic Club*, *Inc.* 457 S.W.2d 41, 45 (Tex. 1970); *City of Webster v. Signad, Inc.*, 682 S.W.2d 644, 646 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). Implicit in this constitutional safeguard is the idea that laws must have an understandable meaning and must provide legal standards that are capable of application. *City of Mesquite v. Aladdin's Castle, Inc.*, 559 S.W.2d 92, 94 (Tex. Civ. App.—Dallas 1977), *writ ref'd n.r.e by* 570 S.W.2d 377 (Tex. 1978) (per curiam). Due process is violated and a law is invalid if persons of common intelligence are compelled to guess at a law's meaning and applicability. *Attic Club*, 457 S.W.2d at 45; *Pennington v. Singleton*, 606 S.W.2d 682, 689 (Tex. 1980); *Signad*, 682 S.W.2d at 646. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. *Grayned v. City of Rockford,* 408 U.S. 104, 108-09 (1972).

Noell asserts the Ordinance is unconstitutionally vague because it fails to give fair warning to those who might violate it and fails to give sufficient guidance to those who enforce it, yet provides for significant penalties, including criminal penalties, for any violations. Among his complaints, Noell asserts the Ordinance is unconstitutionally vague because it failed to define the term "owner." An ordinance is not unconstitutionally vague merely because it does not define words or phrases. *Zaborac v. Tex. Dep't of Pub. Safety*, 168 S.W.3d 222, 225 (Tex.

17

App.—Fort Worth 2005, no pet.). In interpreting an ordinance, we construe words according to their common usage, unless they have acquired a technical or particular meaning." *Id.*

The term "owner" means different things in different circumstances. Because the term does not have a definite legal meaning, its meaning must, where possible, be ascertained from the context and subject matter in which it used. *See Realty Trust Co. v. Craddock*, 112 S.W.2d 440, 443 (Tex. 1938); *Travis Cent. Appraisal Dist.v.. Signature Flight Support. Corp.,* 140 S.W.3d 833, 839 (Tex. App.—Austin 2004, no pet). According to the City, the context in which the term was used and the subject matter of the Ordinance were sufficient to provide the term with an ascertainable meaning. We disagree. Indeed, we conclude the context and subject matter in which the term was used in the Ordinance serves to highlight its vagueness.

The term "owner" was used for the purposes of requiring the "owner of the airport" to control operations at the airport. The term "airport" does not simply reference real property, but references the activity conducted on that property. *Cf. Lindsay v. Papageorgiou*, 751 S.W.2d 544, 548-49 (Tex. App.—Houston [1st. Dist.] 1988, writ denied) (concluding word "owner" as used in connection with a business or enterprise connotes "operation" of that business). The airport itself was not an entity with an owner of record, but CBA was the record title owner of the land on which the airport was based. That landing strip, however, was encumbered with Homeowners' easements, giving them the right to use the landing strip. Noell, on the other hand, owned the structures and hangars on the airport property and was also the operator of the airport. The Zoning Committee had jurisdiction within the easement, and thus had authority over the record title owners.

A review of the City's own Code, and other Texas statutes, illustrates that the term owner could include various interests that might be deemed "owners" of the airport. Section 95.01 of

18

the City's own Code, referring to the duties of owners to keep property free from trash and weeds, is arguably the most germane statue that might assist in determining the meaning of the term "owner" as used in the Ordinance. That section includes as owners any person, firm or corporation "having jurisdiction within an easement." The Texas Legislature has in various contexts defined owner as including "operators," those with a "property interest," and those claiming a possessory interest by virtue of "legal" or "equitable title." *See* TEX. SPEC. DIST. CODE ANN. § 8801.001(8) (West 2013 Pamph.) (well owner includes a person with an ownership interest in a well, operates a well, or owns the land on which a well is located); TEX. WATER CODE ANN. § 26.342 (West 2008) (owner includes person with legal possession or an ownership "interest" in petroleum storage system); TEX. GOV'T CODE ANN. § 2007.002(2)(4) (West 2008) (owner includes a person with legal or equitable title to an interest in real property recognized by common law); TEX. PROP. CODE ANN. § 201.003 (West 2007) (owner means a person that owns record title to real property).

Here, the context and subject matter in which the term "owner" was used reveals it could possibly, but may not necessarily, include various interests. The term could reference a person with the property right to use the land as an airport, a person that operates the airport, a person with the right to control the airport, a person that owns physical structures or leaseholds on the airport, or also, as the City contends, a person that owns record fee-simple title to the land on which the airport is located. We conclude the term owner, as used in the Ordinance, is unconstitutionally vague because it fails to give sufficient guidance as to whose conduct it is to regulate, who is legally responsible to comply with its provisions, and who could be criminally liable for its violations.

19

We also agree with Noell that other provisions of the Ordinance are unconstitutionally vague. The Ordinance requires the owner of the airport to adopt rules and regulations "consistent" with the Texas Department of Transportation's Model Rules and Regulations for the "appropriate size and type of airport." The model rules were developed as a model for cities and counties to govern their own publicly owned airports, not to regulate privately owned airports. Even then, the model rules were only provided as a "guide" and "template" and were not intended or required to be adopted exactly as written. The City acknowledged the rules should be modified to suit the particular airport, depending on its size and type, but also acknowledged that the model rules provided no guidance as to what kinds of modifications might be required based on these considerations. Instead, the City admitted that it would make these decisions.[7]

We conclude the Ordinance's requirement that the owner of the airport adopt rules and regulations "consistent" with the model rules provided virtually no guidance to those who could be charged with violating it or to those responsible for enforcing it. Consequently, this provision is likewise unconstitutionally vague. Therefore, the trial court erred in granting the City's motion for summary judgment.[8]

The City also complains the trial court erred by granting Homeowners' declaratory and injunctive relief with respect to the City's Ordinance and CPSB's application of that Ordinance. In view of our disposition of the proceeding points, we conclude reversal and remand of these

[7] The Ordinance provided no timeline or mechanism for preapproval of any such rules and regulations, and required any rules adopted be maintained by the airport manager and subject to review "upon reasonable request."

[8] Noell also raises other complaints regarding the Ordinance's provisions, but in view of our disposition of these complaints, it is unnecessary to determine those issues. Noell did not file a cross-motion for summary judgment and we must therefore remand his claims to the trial court regardless.

20

points is necessary to permit the trial court to determine what, if any, injunctive relief is appropriate.[9]

APPEAL OF BILLINGSLEY APPELLANTS

We now turn to the complaints raised by the Billingsley appellants. The jury found (1) Billingsley and the Zoning Committee breached their fiduciary duties to Homeowners, (2) CBA breached the Note and Contract, (2) CBA breached the Air Park Restrictions, (3) the Zoning Committee breached its duties by failing to enforce those restrictions, (4) Billingsley was responsible for the conduct of the Zoning Committee, (4) Homeowners had easements to use the landing strip for aviation purposes, and (5) the Billingsley appellants interfered with Homeowner's easements. The trial court's final judgment awarded actual damages, and declaratory and injunctive relief based on these findings.

In their first issue, the Billingsley appellants contend the trial court's judgment must be reversed because the trial judge that signed the judgment, the Honorable Scott Becker, did not preside over the jury trial. The Billingsley Appellants specifically complain that Judge Becker's judgment granted declaratory and injunctive relief even though Judge Becker "heard no evidence."

The record shows Judge Curt Henderson presided over the case from the time it was filed, throughout two temporary injunction hearings, numerous motions for summary judgment, and finally the three-week jury trial. Judge Henderson, however, retired shortly after the jury

_____

[9] We note the City opposes a remand of Homeowners' claims with respect to the constitutionality of the Ordinance because Homeowners did not file a notice of appeal from the trial court's summary judgment on that issue. However, the trial court's judgment included declaratory and injunctive in favor of Homeowners based on their constitutional complaints. Although the City contends its complaints regarding the injunctive and declaratory relief would entitle it to rendition, not remand, we disagree. After reviewing the record, it is apparent that the alleged error concerns the trial court's granting injunctive and declaratory relief that was beyond the scope of relief requested in the summary judgment proceedings. Because our disposition of the previous points necessitates remand regardless, we need not reach this issue.

returned its verdict, and before signing a final judgment. Judge Becker then succeeded Judge Henderson. Homeowners filed a motion requesting Judge Henderson be appointed as a visiting judge to allow him to continue to preside over the case, which would have allowed Judge Henderson to sign the final judgment. The Billingsley appellants, however, opposed the motion, and Judge Becker denied it.

In the subsequent post-verdict proceedings, both the Billingsley appellants and Homeowners requested Judge Becker to sign their respective proposed judgments, both of which included declaratory and injunctive relief. The Billingsley appellants filed a brief in support of their proposed judgment, which included proposed findings of fact and conclusions of law. In a footnote in that brief, the Billingsley appellants noted there could be "questions" regarding Judge Becker's "authority" that might render the judgment "void," but they expressly stated they did not object to Judge Becker proceeding. They then invited Judge Becker to review the trial evidence and urged him to accept their proposed judgment.

On appeal, the Billingsley appellants now assert Judge Becker had no "authority" to sign a final judgment that included injunctive or declaratory relief and, therefore, the judgment, or at least portions of it, are "void." The Billingsley appellants do not dispute a successor judge has authority over cases in which another judge presided, and even has authority to enter a judgment based on prior summary judgment rulings or a jury verdict. *See* Tex. R. Civ. P. 18; *see also Gholson v. Thorn*, 597 S.W.2d 568, 571 (Tex. Civ. App.—Dallas 1980, no writ); *Walker v. Arlington Disposal Co.*, 05-01-00283-CV, 2002 WL 84439, *5-6 (Tex. App.—Dallas Jan. 23, 2002, no pet.) (not designated for publication). They, however, assert the trial judge's "authority" to do so is limited to cases in which the entry of judgment is "purely ministerial," and that a successor judge does not have the authority to grant declaratory or injunctive relief when

22

he did not preside at trial. Finally, and most importantly, they assert because this error is jurisdictional, they neither waived the error nor are estopped from asserting it now.

A judgment is void only when it is apparent the court rendering it lacked (1) jurisdiction over the parties or property; (2) jurisdiction over the subject matter; (3) jurisdiction to enter the particular judgment; or (4) the capacity to act as a court. *Karstetter v. Voss,* 184 S.W.3d 396, 402 (Tex. App.—Dallas 2006, no pet.); *see also Browning v. Placke*, 698 S.W.2d 362, 363 (Tex. 1985). The Billingsley appellants direct this Court to no authority that the complained-of error is "jurisdictional." Instead, they direct us to cases acknowledging that Texas Rule of Civil Procedure 18 allows a successor judge to dispose of unresolved matters in a case, but stating the rule does not "allow" a successor judge to render judgment without hearing evidence. *See Bexar Cnty. Ice Cream Co., Inc. v. Swensen's Ice Cream Co.,* 859 S.W.2d 402, 404-05 (Tex. App.— San Antonio 1993, writ denied); *W.C. Banks v. Team, Inc.*, 783 S.W.2d 783, 786-87 (Tex. App.—Houston [1st. Dist.] 1990, no writ). The Billingsley appellants therefore conclude that because Judge Becker did not hear the evidence, the complained-of error affected his "authority" and any error is "jurisdictional." *See, e.g., Greene v. State*, 324 S.W.3d 276, 280-81 (Tex. App.—Austin 2010, no pet.) (concluding that retired judge, not sitting by assignment, had "no authority" because he lacked capacity to act as a court).

The terms authority and jurisdiction are not however synonymous. *See Stine v. State*, 935 S.W.2d 443, 445 (Tex. App.—Waco 1996, pet. ref'd) (explaining that "lack of authority" is not synonymous with "lack of jurisdiction") (*citing Mireles v. Waco*, 502 U.S. 9, 13 (1991)). The Texas Supreme Court has held that a successor judge's order granting a motion for new trial raising evidentiary grounds was not void, even though the successor judge heard no evidence in the case. *See Porter v. Vick*, 888 S.W.2d 789, 790 (Tex. 1994), *overruled on other grounds by In*

23

*re Baylor Med. Ctr. At Garland*, 280 S.W.3d 227 (Tex. 2008). In reaching this conclusion, the court relied in part on *Texaco, Inc. v. Pennzoil Co.*, 729 S.W.2d 768, 846–47 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.). In *Texaco*, the original trial judge became ill three months into a lengthy trial. *Id.* at 845. Another judge was substituted to preside over the remainder of the trial proceedings, including the preparation of the charge, rulings on Texaco's motions for judgment and judgment n.o.v., and its motion for new trial. On appeal, Texaco complained of the substitution, which it timely objected to, because the substitute judge was unfamiliar with significant testimony. *Id.* at 846. The Houston First Court of Appeals concluded the substitution was not error. Although the Houston Court relied in part on the fact that the jury in that case was the fact finder, the Court did not suggest the substituted judge could perform only ministerial functions. *Id.* at 846-47. Indeed, the successor judge in that case would necessarily have been required to make rulings and exercise its discretion based on evidence presented before he succeeded the original judge.

Here, as in *Texaco*, the jury was the fact finder, and even the declaratory and injunctive relief was based primarily on the jury's fact findings. We acknowledge Judge Becker was required to make legal determinations and exercise discretion based on the trial evidence in awarding this relief, but the record shows, at both parties' request, he reviewed the extensive trial record.[10] We conclude the complaint the Billingsley appellants now raise did not implicate Judge Becker's jurisdictional authority. *Cf., U.S. Bank, Nat. Ass'n v. Am. Reality Trust, Inc.* 275 S.W.3d 647, 650 (Tex. App.—Dallas 2009, pet. denied) (noting after bench trial, original trial judge entered extensive fact findings awarding damages, attorney's fees, and expenses, but new

---

[10] The question of whether imminent harm exists to warrant injunctive relief is a legal question for the court, not a factual question for the jury. *Operation Rescue-Nat'l v. Planned Parenthood of Houston of SE Tex., Inc.,* 975 S.W.2d 546, 554 (Tex. 1998). While this question may turn on disputed facts, the Billingsley appellants do not direct this Court to any such factual dispute. Homeowners contend there was none, and direct this Court to evidence that Billingsley himself testified that he would violate the Ordinance in the absence of injunctive relief.

trial judge then amended final judgment and findings of fact, reducing damage award and denying attorney's fees); *Atlas Metal Works v. City of Dallas*, 30 S.W.2d 431, 432 (Tex. Civ. App.—Dallas 1930, no writ) (stating parties can agree to allow trial court to consider evidence even if not "formally introduced"); *Cf. Eubanks v. State*, 11 S.W.3d 279, 281 (Tex. App.— Texarkana 1999, no pet.) (concluding elected judge who did not preside over revocation had authority to sign judgment even though visiting judge heard case). Therefore, error, if any, did not render the judgment void. We resolve the first issue against the Billingsley appellants.

In their second issue, the Billingsley appellants challenge the judgment against the Zoning Committee for breach of fiduciary duty, intentional interference with Homeowners' easements, and failure to enforce property restrictions. They argue these portions of the trial court's judgment must be reversed because Homeowners failed to rebut a statutory presumption of reasonableness set out in section 202.004(a) of the Texas Property Code. *See* TEX. PROP. CODE ANN. § 202.004(a) (West 2007). Section 202.004(a), entitled "Enforcement of Restrictive Covenants," allows a "homeowners' association" to bring claims against homeowners for breach of restrictive covenants. Subsection (a) provides that an exercise of "discretionary" authority by a homeowners association is presumed to be reasonable unless the court determines, by a preponderance of the evidence, that the exercise of discretionary authority was arbitrary, capricious, or discriminatory. TEX. PROP. CODE ANN. § 202.004(a) (West 2007).

The Billingsley appellants do not assert the evidence is insufficient to prove, by a preponderance of the evidence, that the Zoning Committee acted in an arbitrary, capricious, or discriminatory manner. Instead, they assert the trial court, as the statutory fact finder on this issue, expressly found Homeowners failed to meet their burden to make this showing. They further assert this finding compels the conclusion that the Zoning Committee acted "reasonably,"

25

which conflicts with – and overrides - the jury's findings that the Zoning Committee breached its fiduciary duty, intentionally interfered with Homeowners' easements, and breached the restrictive covenants.

First, we do not agree the record shows the trial court expressly found Homeowners failed to show the Zoning Committee acted in an arbitrary, capricious, or discriminatory manner. To support this contention, the Billingsley appellants rely on a statement the trial court made (after the jury returned its liability verdict) in response to the Homeowners' request for attorneys' fees under section 202.004. In denying this request, the trial court stated it was going to rule "no" at that "point," stating it did not understand enough about section 202.004 (which provides for punitive damages), and that it did not think Homeowners met their burden of proof. *See* TEX. PROP. CODE ANN. § 202.004(a) (West 2007). We do not agree this constitutes an express finding regarding the Zoning Committee's conduct.

Regardless, assuming without deciding, section 202.004 applies to Homeowners' claims, and further assuming the Zoning Committee is a "homeowners' association" as contemplated by section 202.004, the Billingsley appellants have failed to show reversible error. The Billingsley appellants assert section 202.004 requires we set aside the jury's liability findings against the Zoning Committee. However, the Billingsley appellants do not assert the trial court erred in submitting these liability issues to the jury, they do not direct us to what, if any, objections, they made to submitting these issues to the jury, or direct us to where in the record they otherwise raised section 202.004 as a basis to deny Homeowners' relief in the trial court.

As a prerequisite to presenting a complaint for appellate review, the record must show the complaint was made in the trial court and the trial court ruled on the complaint. *See* TEX. R. APP. P. 33.1(a); *Johnson v. Oliver*, 250 S.W.3d 182, 190-91 (Tex. App.—Dallas 2008, no pet.); *see*

26

*also Walder v. State*, 85 S.W.3d 824, 826 (Tex. App.—Waco 2002, no pet.) (stating that to comply with Texas Rule of Appellate Procedure 38.1(i), an appellant should include explanation of how issue has been preserved or why no preservation was required); *Jarvis v. Rocanville Corp.*, 298 S.W.3d 305, 312 (Tex. App.—Dallas 2009, pet. denied) (concluding party waived error when it failed to provide record citation showing it raised argument in trial court and obtained ruling). Further, if a trial court must resolve an issue before the jury can properly perform its fact-finding role, a party must object in time for the trial court make an appropriate ruling without having to order a new trial. *See Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000); *Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999). The record before us is voluminous, consisting of nineteen volumes of clerk's record and thirty-one volumes of reporter's record, including sixteen volumes of exhibits. An appellate court has no duty to search a voluminous record without guidance from the appellant to determine whether an assertion of reversible error is valid. *Dallas Ind. Sch. Dist. v. Finlan*, 27 S.W.3d 220, 237 (Tex. App.—Dallas 2000, pet. denied); *See* Tex. R. App. P 38.1(i). We conclude the Billingsley appellants waived any error predicated on section 202.004(a). We resolve the second issue against the Billingsley appellants.

In their third issue, the Billingsly appellants assert the judgment against the Zoning Committee and Billingsley on Homeowners' breach of fiduciary duty claims must be reversed because no fiduciary relationship existed. The trial court determined the Zoning Committee and Billingsley, as a member of that committee, owed Homeowners a fiduciary duty as a matter of law. In this issue, the Billingsley appellants assert it erred in doing so.

A fiduciary relationship is not limited to cases where legal relations create a fiduciary duty as a matter of law, but it exists in all cases in which influence has been acquired and abused,

27

in which confidence has been reposed and betrayed, and the origin of the confidence is immaterial, and may be moral, social, domestic or merely personal. *Tex. Bank and Trust. Co. v. Moore*, 595 S.W.2d 502, 507 (Tex. 1980) (citing *Higgins v. Chicago Title & Trust, Co.*, 312 Ill. 11, 18, 143 N.E. 482, 484 (1924). A fiduciary relationship can arise when the parties are "under a duty to act for or give advice for the benefit of another upon matters within the scope of the relationship," and when "a special confidence is reposed on another who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *See Moore,* 595 S.W.2d at 507 (citing *Lappas v. Barker,* 375 S.W.2d 248, 250 (Ky. 1964).

The Zoning Committee was established under the terms of a Note and Contract that required all lots be sold pursuant to restrictive covenants. Paragraph 15 of the restrictive covenants authorized the Zoning Committee to "act as a governing body with legal authority to make those rulings necessary or call for an election to protect the best interests of the community until an incorporated government can be established." The property owners were given the right to elect three of these members. The Zoning Committee executed certain by-laws to effectuate the intent and purposes of the restrictive covenants. The by-laws provided, "[t]he Zoning Committee will enforce the contractual requirement that 'each purchaser, his heirs or assigns will maintain each tract owned by him in a clean and sightly condition,'" and, "[w]here necessary, appropriate action may be taken by the Zoning Committee to protect home owners by maintaining a lot and assessing the owner." The by-laws further provided "[t]he Zoning Committee may take such other actions [it] deem[s] necessary to protect the best interests of the community under the authority granted them by the Air Park-Dallas covenants and restrictions."

The Billingsley appellants assert neither the obligations in the Air Park restrictions nor the Zoning Committee's by-laws can give rise to a fiduciary duty because there was no fiduciary relationship that predated those obligations. When a fiduciary duty is alleged to arise from a "business relationship," "to give full force to contracts," we do not recognize such a relationship lightly. *Burleson State Bank v. Plunkett*, 27 S.W.3d 605, 611 (Tex. App.—Waco 2000, pet. denied) (citing *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962)). The Texas Supreme Court has explained its reluctance to allow contractual obligations to create fiduciary duties as necessary to respect the rights of the parties, and particularly sophisticated parties, in the commercial context, to "define the terms of their business relationships." *See Nat'l Plan Adm'rs, Inc. v. Nat'l Health Ins. Co.*, 235 S.W.3d 695, 702 (Tex. 2007); *see also Willis v. Donnelly*, 199 S.W.3d 262, 278 (Tex. 2006). To protect these interests, the Court has held that that to impose a fiduciary duty in a "business transaction," the relationship must exist before the agreement made the basis of the suit. *Nat'l Plan*, 235 S.W.3d at 702; *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997).

The Zoning Committee did not engage in a "business transaction" in a "commercial context," and was not a contracting party acting in its own self-interest. Rather, the Zoning Committee was created for the sole purpose of governing Air Park, and the Restrictions provided it would do so in the community's "best interests." The Air Park by-laws reflect the Zoning Committee's purpose. Fiduciary duties are equitable in nature and circumstances giving rise to such duties are not subject to hard and fast rules. *Nat'l Plan*, 235 S.W.3d at 702; *Moore*, 595 S.W.2d at 508. The general prohibition of imposing fiduciary duties in a "business transaction" is based on the proposition that parties to a contract should be free to pursue their own interests and to define the terms of their relationship. *See Nat'l Plan*, 235 S.W.3d at 702; *see also Crim*

*Truck & Tractor v. Navistar Intern. Trans. Corp*, 823 S.W.2d 591, 594 (Tex. 1992). That prohibition would thus not operate to bar a fiduciary relationship from arising when an entity is created to act in the best interests of another, and voluntarily undertakes to act in another's interest, which is the very foundation of a fiduciary relationship. Under these circumstances, we cannot agree no fiduciary duty existed as a matter of law.

In reaching this conclusion, we reject the Billingsley appellants' claim that no fiduciary duty exists as a matter of law because the Zoning Committee had discretion regarding enforcement of the restrictive covenants and because the Homeowners also had the right to enforce the restrictive covenants.[11] The Billingsley appellants have provided no reasoned analysis why either of these facts, standing alone, would prevent a fiduciary duty from arising. *Cf. Sassen v. Tanglegrove Townhouse Condo. Assoc.*, 877 S.W.2d 489, 492 (Tex. App.— Texarkana 1994, writ denied) (explaining that even when exercise of duties is placed in agent's absolute discretion, agent must still use good faith and act reasonably in discharge of duties.). And the authorities they cite as support for this contention are clearly distinguishable on their facts. *See Simms v. Lakewood Village Prop. Owners Assoc.*, 895 S.W.2d 779, 787 (Tex. App.— Corpus Christi 1995, writ denied) (plaintiff claimed homeowners' associations' fiduciary duty arose from a provision which gave both the plaintiff and the association the identical "right" to enforce restrictive covenants); *Harris v. The Spires Council of Co-Owners*, 981 S.W.2d 892, 898 (Tex. App.—Houston [1st Dist.] 1998, no writ) (plaintiff claimed condominium owners' association's fiduciary duty arose from an "exclusive authority" that the Court determined did not exist).

---

[11] The Billingsley appellants also assert section 82.103 of the property code imposing fiduciary duties on board members of a condominium association does not impose fiduciary duties on the Zoning Committee. *See* TEX. PROP. CODE ANN. § 82.103(a) (West 2007). We agree, and we do not rely upon it for our conclusion. However, the provision illustrates that different policy considerations apply to this type of relationship than the policy considerations courts consider when determining whether a fiduciary duty exists in a commercial context.

The Billingsley appellants also assert any fiduciary obligations the Zoning Committee may have had to Homeowners under Paragraph 15 ceased when an "incorporated government" was established. The only record citation they provide is to the City of Carrollton's annexation of the airport property, including the eastside business lots. Initially, we note the jury expressly found the Zoning Committee had authority over the eastside business lots specifically "under Paragraph 15." The Billingsley appellants have not challenged this finding on appeal. Further, the Billingsley appellants direct this Court to no evidence that an incorporated government was established to govern the home sites. We conclude the Billingsley appellants have not shown the Zoning Committee's obligations under paragraph 15 ceased upon the City's limited annexation.

The Billingsley appellants next assert the trial court's judgment "must be reversed" because of an "incorrect" jury instruction that the Zoning Committee and Billingsley owed Homeowners a fiduciary duty "because a special relationship existed between them." *See Crim Truck & Tractor*, 823 S.W.2d at 594. The jury was not asked to determine whether a fiduciary duty existed, and the Billingsley appellants do not assert the jury should have made that determination. The Billingsley appellants have not explained how they preserved any alleged error, or articulated how this instruction requires reversal of the trial court's judgment. *See Jarvis,* 298 S.W.3d at 312 (concluding party waived error when it failed to provide record citation showing it raised argument in trial court and obtained ruling).

Finally, the Billingsley appellants contend the evidence is legally and factually insufficient to support the jury's finding that Billingsley breached his fiduciary duty to Homeowners. To find Billingsley breached his fiduciary duty, the charge required the jury to find, and the jury found, among other things, that Billingsley failed to exercise the most

31

scrupulous honesty toward homeowners.  The Billingsley appellants assert this finding must be set aside because there is no evidence of "dishonesty."

In this issue, the Billingsley appellants have failed to direct this Court to the appropriate standard under which we are to review the evidence, fail to discuss the evidence under the appropriate standard of review, and fail to explain how the evidence Homeowners did present failed to meet their burden at trial.[12]  Indeed, the Billingsley appellants fail to discuss, or even acknowledge, the evidence Homeowners relied on to support their assertion that Billingsley failed to exercise the most scrupulous honesty toward homeowners.  For example, Homeowners presented evidence that Billingsley did not inform Homeowners, or even his limited partner Noell, that he was seeking disannexation from Hebron, which laid the groundwork for his subsequent actions in causing the City to annex the property, getting the Ordinance passed, and ultimately violating the Ordinance, which resulted in the City ordering the airport closed.  Instead, the Billingsley appellants ignore this evidence and pluck out portions of the voluminous record that they assert show Billingsley was always "completely candid about his intention to develop the property for commercial use."

In conducting a legal sufficiency review of the evidence, we must consider all of the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it.  *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).  When a party attacks the legal sufficiency of an adverse finding on which it did not have the burden of proof, it must demonstrate that there is no evidence to support the adverse finding.  *Croucher v.*

---

[12]  In their reply to Homeowners' brief, the Billingsley appellants complain that Homeowners' "discussion of the evidence of breach of fiduciary duty is essentially non-responsive."  They specifically assert Homeowners failed to identify evidence that Billingsley "hid" his intentions to develop the property from anyone.  Appellants have failed to provide any argument or authority that affirmative evidence of concealment was necessary for Homeowners to meet their burden to show Billingsley failed to act with the most scrupulous honesty toward homeowners.  We further note, it is not Homeowners obligation to show the trial court's judgment is correct, but appellants burden to show error requiring reversal.  *See* Tex. R. App. P. 38.1(i).

32

*Croucher*, 660 S.W.2d 55, 58 (Tex. 1983); *Bellino v. Comm'n for Lawyer Discipline*, 124 S.W.3d 380, 385 (Tex. App.—Dallas 2003, pet. denied). We will sustain a legal sufficiency or "no evidence" challenge if the record shows one of the following: (1) a complete absence of evidence of a vital fact, (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact. *See City of Keller*, 168 S.W.3d at 810. While the basis for the Billingsley appellants' sufficiency complaint is not entirely clear, reviewing the substance of their argument, we conclude they have, at best, raised a legal sufficiency point asserting they conclusively proved the opposite of a vital fact. Specifically, they assert evidence that Billingsley was honest about purchasing the property as an "investment" and evidence that Homeowners became aware (from various sources) that he later took actions to develop the property conclusively proves Billingsley did not fail to act with the "most scrupulous honesty." We cannot agree, and resolve the third issue against the Billingsley appellants.

In their fourth issue, the Billingsley appellants assert Homeowners' claims against them are "barred" by the "*Noerr-Pennington* Doctrine." The Billingsley appellants do not explain how they preserved this issue for review, whether preservation was required, or provide us with the appropriate burdens of proof, standard of review, or proper framework in which to analyze this issue. *Walder,* 85 S.W.3d at 826; *see also Jarvis,* 298 S.W.3d at 312. Nor are these issues apparent from the independent review of the voluminous record and applicable law we have undertaken. *See also Finlan*, 27 S.W.3d at 237 (appellate court under no duty to search voluminous record); *Robertson v. SW Bell Yellow Pages, Inc.*, 190 S.W.3d 899, 903 (Tex.

33

App.—Dallas 2006, no pet.) (appellate court will not make appellant's arguments for her). We conclude this issue has not been adequately briefed. *See* TEX. R. APP. P. 38.1(i).

Moreover, we note the Billingsley appellants have failed to adequately address whether the doctrine applies to Homeowners' claims for breach of contract and breach of fiduciary duty in the first instance, focusing instead primarily on whether Homeowners proved an exception to the doctrine. The *Noerr-Pennington* doctrine, as initially articulated, provides immunity from "antitrust liability" to those who petition the government for redress. *See generally E. RR Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *see also Prof. Real Estate Inv., Inc. v. Columbia Pict. Indust., Inc.*, 508 U.S. 49, 55-56 (1993). The doctrine has been generally expanded to provide immunity from liability for other state-created causes of action. *See BE & K Const. C. v. NLRB*, 536 U.S. 516, (2002) (unfair labor practices); s*ee also Nunag-Tanedo v. E. Baton Rouge Parish Sch. Bd.*, 711 F.3d 1136, 1139 (9th Cir. 2013) (noting *Noerr-Pennington* has been extended to other "statutory" schemes). Some courts have further extended the doctrine to provide immunity to certain common-law causes of action. *See Video Intern. Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*, 858 F.2d 1075, 1084 (1988); *see also Nunag-Tanedo*, 711 F.3d at 1141 n.2 (noting uncertainty as to whether *Noerr-Pennington* applies to state law claims).

In the trial court and on appeal, Homeowners alleged that despite these expansions, the *Noerr-Pennington* doctrine does not apply to claims for breach of contract or breach fiduciary duty, when liability is based on breaches of duties voluntarily undertaken between parties. Relying on *RRR Farms v. Am. Horse Prot. Ass'n, Inc.*, 957 S.W.2d 121, 126-29 (Tex. App.—Houston [14th Dist.], pet. denied), the Billingsley appellants argue the doctrine does apply to such claims. In that case, the plaintiff did not raise claims for breach of contract or breach of

34

fiduciary duty, and did not argue the doctrine did not apply to the tort claims it did raise, which were based on anti-competitive behavior. *See id.* The Houston Fourteenth Court of Appeals nevertheless generally stated that, although the doctrine was initially developed in the anti-trust context, it had since been expanded and applied "regardless of the underlying cause of action" asserted. *Id.* at 129. Based on the context in which the Court made the statement, we do not agree the Court considered, much less determined, the particular issue raised here.

The Billingsley appellants also rely on *Azzar v. Primebank, FSB*, 499 N.W.2d 793, 795-96 (Mich. Ct. App. 1993), which held the doctrine bars claims for breach of fiduciary duty. The only reasoning offered by that court was that the doctrine is a "principal of constitutional law" that protects First Amendment petitioning activities. *Id.* at 796. We cannot, based on the record and briefing before us, conclude this alone provides an adequate basis upon which to extend *Noerr-Pennington* to the claims before us. When parties enter into voluntary contractual or fiduciary relationships, they routinely agree to undertake certain obligations and duties that may require them, or prohibit them, from doing certain things they would otherwise have an absolute constitutional right to do, or not do. Expanding the doctrine to bar all such claims, regardless of the nature of the obligation between the parties or the particular breach alleged, could have significant, far reaching, and unintended consequences.[13] Without adequate briefing or analysis of this issue, we decline to reverse the trial court's judgment on this basis.

Finally, the Billingsley appellants have also failed to show that even if the doctrine applied, it would operate to bar Homeowners' claims. Although Homeowners clearly presented evidence of, and relied on, Billingsley's conduct in securing passage of the airport Ordinance, Homeowners' claims were not dependent on such conduct. The Billingsley appellants have not

---

[13] For example, certain businesses rely on their fiduciaries to act on their behalf before government bodies.

35

shown even if the doctrine applies, it requires reversal of the trial court's judgment. The fourth issue is without merit.

In their fifth issue, the Billingsley appellants contend the "judgment for breach of the Note and Contract and breach of the restrictive covenants should be reversed." The jury found CBA breached the Note and Contract "by failing to maintain the landing area in such a way as to timely comply with the City's ordinances." Here, the Billingsley appellants complain there is not "any evidence" CBA assumed the obligations in the Note and Contract. But, the jury was not asked to make this determination. In the absence of a timely and appropriate charge objection that is reurged on appeal, appellate courts measure the sufficiency of the evidence by the charge as given to the jury. *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 530 (Tex. 2002). To the extent the Billingsley appellants are not challenging the jury's finding, they have failed to direct us to any trial court ruling on which they predicate error.

Regardless, in asserting CBA was not bound by the Note and Contract, the Billingsley appellants argue CBA did not expressly assume the obligations in the Note and Contract when it purchased its interest in Air Park. In doing so, the Billingsley appellants ignore that the trial court's judgment was not based on an express assumption, but on the trial court's conclusion that the obligations in the Note and Contract "ran with the land." The Billingsley appellants purport to address this issue in a footnote, asserting we should disregard that at as a basis for affirming the trial court's judgment because Homeowners "did not obtain a jury finding" that the obligations ran with the land.

The Billingsley appellants have failed to provide any argument or authority that this was a fact question necessitating a jury finding. Nor have the Billingsley appellants asserted that if a finding was required, the trial court could not properly make the finding under rule 279 of the

rules of civil procedure. *See* TEX. R. CIV. P. 279 (explaining circumstances when omitted findings may be made or deemed found by trial court in support of a jury's verdict).

Finally, the Billingsley appellants' suggest, in a single sentence, that the obligations in the Note and Contract did not run with the land because the Note and Contract provided the obligations were binding on Air Park Associates "heirs and assigns." They assert this "successor language" would be superfluous if the obligations ran with the land. However, such successor language, while not required, evidences an intent that obligations do run with the land, not the contrary. *See Musgrave v. Brookhaven Lake Prop. Owners Ass'n*, 990 S.W.2d 386, 395 (Tex. App.—Texarkana 1999, pet. denied).

Although we have previously concluded the Billingsley appellants complaint that the Note and Contract did not require CBA to operate an airport is not a proper challenge to the jury's breach of contract finding, we will consider this complaint insofar as the Billingsley appellants incorporate this arguments in its challenge to the trial court's declaratory judgment that CBA's obligation to maintain the landing area requires that it operate an airport.

The Note and Contract required CBA to make the landing strip available to homeowners and provided the landing strip would be "owned, controlled, and maintained" by CBA at no cost to the homeowners. According to the Billingsley appellants, this duty to maintain did not include the duty to operate an airport. Placing the term "maintain" in the proper context, the Note and Contract required CBA, at its expense, to preserve the landing strip and keep it in existence for Homeowners' use as a landing strip. *See Orix Cap. Markets, LLC v. Wash. Mut. Bank*, 260 S.W.3d 620, 625 (Tex. App.—Dallas 2008, no pet.) (maintain means to "keep in existence or continuance; preserve; retain."). In order to do this, due largely to its own actions, CBA had to comply with the Ordinance. Although CBA takes great issue with interpreting its

maintenance obligation such that it is forced to operate an airport in perpetuity at no charge to Homeowners, the Note and Contract provide the remedy to deal with this precise issue. Specifically, if the cost to maintain the landing strip ever ceased to be economically feasible, CBA could avoid these obligations by donating the landing strip to homeowners.

The Billingsley appellants next assert CBA did not breach the restrictive covenants. The jury found CBA breached the restrictive covenants by failing to keep its lots in a "clean and sightly condition." According to the Billingsley appellants, this finding must be set aside because CBA was prohibited from doing so because of the provisions of a temporary injunction entered in a different case. CBA has failed to direct us to where in the record this injunction was admitted into evidence, and it identifies the injunction as "CX 45," i.e. a "court's exhibit," suggesting it was not admitted into evidence.[14] It is not our duty to search the voluminous record to determine whether this exhibit was admitted into evidence or to otherwise locate evidence that would support an appellant's contentions. *See Most Worshipful Prince Hall Grand Lodge v. Jackson*, 732 S.W.2d 407, 412 (Tex. App—Dallas 1987, writ ref'd n.r.e.). We resolve the fifth issue against the Billingsley appellants.

In their sixth issue, the Billingsley appellants contend the trial court's judgment "cannot be supported" by Homeowners' easement claims. The Billingsley appellants assert even if Homeowners possessed an express easement, the easement did not "encompass the eastside business lots or otherwise require [CBA] to operate an airport." However, the trial court did not conclude Homeowners had an easement on the eastside business lots, and the trial court's

---

[14] The Billingsley appellants also direct us to Billingsley's testimony that the temporary injunction entered into in the other case did not allow him to "do anything" with the hangars and that Noell was "in charge" of the hangars. The testimony is insufficient to conclusively establish CBA was legally prohibited from complying with the Air Park Restrictions.

determination that CBA had a duty to operate an airport arose from its duty to maintain the landing strip, not the Homeowners' easements. We have previously disposed of this complaint.

The Billingsley appellants next assert there is legally and factually insufficient evidence to show CBA interfered with Homeowners' easements. According to the Billingsley appellants, CBA did not interfere with Homeowners' easements because it never impeded Homeowners' actual "access" to the landing area or taxiways. The jury found CBA interfered with the Homeowners' easements by making compliance with the City's ordinances more difficult or burdensome.[15] The Billingsley appellants have failed to attack the sufficiency of the evidence under the jury charge as given. *St. Joseph Hosp.,* 94 S.W.3d at 530. Further, appellants wholly fail to discuss the extensive trial evidence of their admitted and deliberate efforts to have the City close the landing strip, so the property could be developed commercially. We conclude they have failed to show reversible error, and resolve the sixth issue against the Billingsley appellants.

In their seventh issue, the Billingsley appellants assert "the permanent injunction is improper and must be dissolved." An applicant for injunctive relief must demonstrate (1) the existence of a wrongful act; (2) the existence of imminent harm; (3) the existence of irreparable injury; and (4) the absence of an adequate remedy at law. *Webb v.Glenbrook Owners Ass'n, Inc.*, 298 S.W.3d 374, 384 (Tex. App.—Dallas 2009, no pet.); *Priest v. Tex. Animal Health Comm'n*, 780 S.W.2d 874, 875 (Tex. App.—Dallas 1989, no writ). Whether to grant a permanent injunction is ordinarily within the sound discretion of the trial court and, on appeal, review of the trial court's action is limited to the question of whether the trial court clearly abused its discretion. *Webb,* 298 S.W.3d at 384; *Priest*, 780 S.W.2d at 875. Because an injunction is an

---

[15] The jury's findings against Billingsley and the Zoning Committee are based on findings they tortiously interfered with Homeowners' easements. The Billingsley appellants fail to properly analyze the evidence under this theory.

equitable remedy, a trial court weighs the respective conveniences and hardships of the parties and balances the equities. *Webb*, 298 S.W.3d at 383-384.

The Billingsley appellants first two complaints concern Homeowners' alleged failure to show they suffered an irreparable injury for which they had no adequate remedy at law. They assert Homeowners can show no irreparable injury based on CBA's failure to comply with the Ordinance, because, by virtue of the trial court's pretrial partial summary judgment order, the Homeowners can comply with the Ordinance themselves. They also contend Homeowners cannot show they lack an adequate remedy at law because they can (and were) compensated by damages for injuries suffered as a result of CBA's past failures to comply with the Ordinance. In making these points, the Billingsley appellants fail to direct this Court to the applicable law concerning what constitutes irreparable injury. Nor do appellants discuss the evidence Homeowners relied on to show irreparable injury. Instead, they rely entirely on their assertion Homeowners can "avoid" any injury caused by CBA's refusal to comply with the Ordinance by abating any violations themselves, bringing legal action to enforce the restrictive covenants, and recovering money damages for having to abate any violations.

An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard. *Milwee-Jackson Joint Venture v. Dallas Area Rapid Transit*, 350 S.W.3d 772, 782 (Tex. App.—Dallas 2011, no pet.); *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). That is, the applicant has to establish there is no adequate remedy at law for damages. *Milwee-Jackson*, 350 S.W.3d at 782. An adequate remedy at law is one that is as complete, practical, and efficient to the prompt administration of justice as is equitable relief. *Id.*

We cannot agree that Homeowners' ability to resort to self-help remedies and perform obligations that CBA is required to perform shows no irreparable injury. Nor does Homeowners' recovery of actual damages for costs it incurred in remedying past violations establish they have an adequate remedy at law. Indeed, a court may properly grant injunctive relief to stop a wrong and remedy it, and award past damages to the injured party for the period of time the wrong existed. *See Marin Real Estate Partners, L.P. v. Vogt*, 373 S.W.3d 57, 76-77 (Tex. App.—San Antonio 2011, no pet.).

Finally, the Billingsley appellants generally complain that the injunction is overly broad, vague and indefinite. They direct us to two provisions of the injunction; the prohibition that they take any actions that would "injure, impair, hinder, and harm the [Homeowners'] easement rights," and the prohibition that they take "any actions that would put any additional tax burdens, encumbrances on or risks to the Homeowners' easements." Again, extensive testimony was presented at trial concerning the Billingsley appellants' various efforts to destroy Homeowners' easements. Homeowners also presented testimony directly germane to their concern the Billingsley appellants would continue to seek out other methods of destroying their easements to accomplish their purpose. Yet, the Billingsley appellants discuss none of this evidence or the harm the trial court was attempting to remedy by the injunction.

The Texas Supreme Court has stated:

> [A]n injunction decree must be as definite, clear and precise as possible and when practicable it should inform the defendant of the acts he is restrained from doing, without calling on him for inferences or conclusions about which persons might well differ and without leaving anything for further hearing. But obviously the injunction must be in broad enough terms to prevent repetition of the evil sought to be stopped, whether the repetition be in form identical to that employed prior to the injunction or (what is far more likely) in somewhat different form calculated to circumvent the injunction as written.

41

*San Antonio Bar Ass'n v. Guardian Abstract & Title Co.*, 156 Tex. 7, 291 S.W.2d 697, 702 (Tex. 1956) (citation omitted). Under this argument, the Billingsley appellants simply recite the complain-of provisions and generally assert they are forced to guess as to their meanings. This argument does not alone suffice to show the injunction is overly broad. *See Vaughn*, 288 S.W.3d at 938-39 (concluding that injunction enjoining "any other interference" and "any conduct calculated to interfere with, impair or disparage" appellant's business relationships with customers in specified area provided reasonable detail of acts sought to be restrained). Further, without a discussion of the evidence offered at trial, it is impossible for this Court to appropriately evaluate the scope of the injunction in the context of the wrong the trial court was attempting to remedy. To the extent the Billingsley appellants suggest this Court should sua sponte review the various other provisions of the injunction to determine if they meet the necessary standards, "[w]e have no duty—or even right—to perform an independent review of the record and applicable law to determine whether there was error." *Bullock v. Am. Heart Ass'n*, 360 S.W.3d 661, 665 (Tex. App.—Dallas 2012, pet. denied).

The Billingsley appellants also complain the injunction improperly "refers" to documents not made "part of" the injunction. The Billingsley appellants first complain of paragraph 16 of the injunction, which ordered CBA to "comply with the terms of the Note and Contract and the Restrictions on Air Park Dallas." The Restrictions were included as an attachment to the trial court's judgment, but the Note and Contract was not. According to the Billingsley appellants, because the Note and Contract was not made part of the injunction, this provision of the injunction is void and must be reversed. They rely on rule 683 of the rules of civil procedure for support. *See* Tex. R. Civ. P. 683. Rule 683 does not, however, prohibit the mere reference to documents that are not made part of the injunction. Rather, it provides that the injunction must

42

describe in reasonable detail, and not *by* reference to the complaint or other document, the act or acts sought to be restrained. *See* Tex. R. Civ. P. 683. Here, the trial court's judgment itself included the relevant text of the Note and Contract, specifically Paragraph B. To the extent the injunction also required CBA to comply with portions of the Note and Contract not otherwise included in the judgment, we modify Paragraph 16 of the injunction to require CBA to comply with the terms of "Paragraph B of the Note and Contract." *See Computek Computer & Office Supplies, Inc. v. Walton*, 156 S.W.3d 217, 224 (Tex. App.—Dallas 2005, no pet.) (modifying overly broad injunction).

The Billingsley appellants also complain of paragraph 6 of the injunction, which requires them to "cease all actions and activities that constitute a violation of the Airport Ordinance or any other applicable City of Carrollton codes or ordinances, or any other laws or regulations, that relate to the Landing Strip Area and Taxiways where the failure to do so would adversely affect the Homeowners' right to access and use the Landing Strip Area and Taxiways for Aviation Purposes." They assert this portion of the injunction is void because the specific laws and regulations were not included in the trial court's judgment. However, so long as an injunction reasonably describes the activities to be enjoined, it may refer to such items as laws or ordinances. *See Layton v. Ball*, 396 S.W.3d 747, 752 (Tex. App.—Tyler 2013, no pet.); *Maloy v. City of Lewisville*, , 848 S.W.2d 380, 385 (Tex. App—Fort Worth 1993, no writ) (holding that reference to ordinance not improper reference to "external document," because injunction "sufficiently describes the act sought to be enjoined [, and] reference to the ordinance, as stated in the injunction, is merely to give further notice as to the enjoined conduct . . ."), *disapproved of on other ground by Schleuter v. City of Fort Worth*, 947 S.W.2d 920 (Tex. App—Fort Worth 1997, pet. denied). Here, the trial court enjoined the Billingsley appellants from taking actions to

43

interfere with Homeowners' easements. The additional provisions requiring the Billingsley appellants to cease violations of applicable laws that would adversely affect Homeowners' easements merely gave further notice of the conduct that was prohibited. We resolve the seventh issue against the Billingsley appellants.

In their eighth issue, the Billingsley appellants generally complain of the trial court's award of declaratory relief to Homeowners. The only additional complaint the Billingsley appellants raise under this issue that we have not previously disposed of concerns the trial court's declaration that, "Under Paragraph B . . . Plaintiffs are owners of a donation option relating to the landing strip and taxiways." They assert this declaration violates the Rule Against Perpetuities.

The Billingsley appellants fail to direct this Court to any particular trial court ruling they assert was erroneous, fail to direct us to the applicable burden of proof at trial or standard of review on appeal, and fail to show where or whether they preserved the alleged error for review or explain why they were not required to do so. Instead, the Billingsley appellants merely recite the Rule against Perpetuities, provide a bare citation to the record where their expert witness testified the donation option violated the Rule (but neglect to provide a similar citation to Homeowners' expert who testified it did not), and conclude the declaratory relief must be vacated.

The Billingsley appellants have not provided any substantive legal argument, authority, or analysis attempting to apply the Rule to the specific facts of this case. Nor have the Billingsley appellants shown that if the Rule does apply, it necessarily results in invalidation of

44

the donation option.[16]   Accordingly, we conclude this issue is inadequately briefed and presents nothing to review.  We resolve the eighth issue against the Billingsley appellants.

In their ninth issue, the Billingsley appellants complain of what they refer to as "*Casteel* Error."   The Billingsley appellants' assert this error occurred because the jury charge did not require the jury to determine which of several types of easements they interfered with.   They assert this presents a "quintessential '*Casteel* problem.'" *See Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 388 (Tex. 2000).   The Billingsley appellants misunderstand the procedural posture and holding of *Casteel*.   *Casteel* provides for the proper harm analysis an appellate court must perform after an appellant has shown charge error.   Specifically, if a theory of liability was improperly submitted to the jury over a party's timely objection, and that theory was submitted in broad form with a valid theory of recovery, the Court of Appeals may not conclude error was harmless based on the properly submitted theory.   Instead, the court must presume the error was harmful.  *See Casteel*, 22 S.W.3d at 389-90.   Here, the Billingsley appellants have not presented a point of error complaining that the trial court erred in submitting any of the easement theories. Absent properly preserved and raised charge error, [17] there is no harm analysis to perform under *Casteel*.  We resolve the ninth issue against the Billingsley appellants.

In their tenth issue, the Billingsley appellants contend we should "vacate the award of attorney's fees as damages."  The jury awarded Homeowners actual damages in the amount of

---

[16] In its judgment, the trial court stated that the "donation option" was a contract right for allocating the obligation to maintain the landing strip.  In reviewing the "donation option," it is helpful to recognize how it operated.  The Note and Contract created an easement on the landing strip.  "Title" to the landing area remained with grantor with the associated obligation to maintain the landing area for at least ten years. After that time, if the landing strip ceased to be "economically feasible," it would be "donated" to the homeowners, who would then be required to maintain the landing strip.  If the landing strip was no longer used as such, title would revert back to the grantor.  Consequently, as a practical matter, the "donation option" did nothing other than alter the obligation to maintain the landing strip, while preserving Homeowners' vested easements.

[17] We agree with the Billingsley appellants they need not object under *Casteel*.   *See Romero v. KPH, Consol, Inc..*, 166 S.W.3d 212, 229 (Tex. 2005).  As *Romero* points out, an appellant preserves error by objecting to the charge error that creates the "*Casteel* problem."  *See id.*   If the trial court properly sustains the objection, and refuses to submit the invalid theory, there is no error.  *See id.*

45

the reasonable and necessary costs they incurred in abating violations of the Ordinance, as well as "reasonable and necessary attorney[']s fees incurred in connection with the proceedings involving the City and [CPSB] . . . ."

The Billingsley appellants assert these damages are barred by this Court's opinions in *Lopez v. Vehicle Removal Corp.*, 225 S.W.3d 891, 893 (Tex. App.—Dallas 2007, pet. denied) and *Burnside Air Conditioning and Heating, Inc.*, 113 S.W.3d 889, 898 (Tex. App.—Dallas 2002, no pet.). These cases held that attorney's fees expended in an earlier lawsuit cannot be recovered as damages in a subsequent suit. It is apparent from a review of those cases, and the authority on which they relied, that they were based on the "American Rule," which prohibits recovery of attorney's fees unless provided for by statute or contract. The Texas Supreme Court subsequently decided *Akin, Gump, Stauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 120-123 (Tex. 2009). In *Akin Gump*, the Texas Supreme Court explained "the American Rule" applied only to cases in which the claimant was seeking attorney's fees for prosecuting or defending the case that was being litigated. *See id.* at 120. The court held the rule did not apply in cases where the plaintiff was seeking fees incurred in a previous case that were caused by their attorney's malpractice, as opposed to fees for the case currently being litigated. *Id.* The Court determined that unless there was some other reason the fees should not be recoverable, the issue was an evidentiary one, and the fees could be recovered if proven under ordinary causation standards. The Court ultimately held there was no such other reason, and the attorney's fees proximately caused by the defendant's attorney's negligence were recoverable. *Id.*

46

According to the Billingsley appellants, the Texas Supreme Court "made clear" its holding applied only to attorney malpractice claims.[18]  But the Court did not expressly limit its holding to cases involving attorney malpractice.  More importantly, the Court's reasoning does not support such a limited application of *Akin Gump*.  Rather, the Supreme Court's opinion was not based on the nature of the claim at issue, but on this Court's misapplication of the American Rule to bar the recovery of attorney's fees as actual damages that were incurred in other matters. *See id*. at 120-22.

Here, the claimed fees were not expended in prosecuting Homeowners' claims against the Billingsley appellants in this suit, or any prior suit.  Nor were the fees expended in pursuing Homeowners' claims against the City or CPSB in this litigation.  Under *Aiken Gump*, the American Rule does not apply under these circumstances.  The Billingsley appellants have articulated no other reason Homeowners attorney's fees are not recoverable as damages or otherwise asserted Homeowners failed to prove their conduct proximately caused these damages. Therefore, we resolve the tenth issue against the Billingsley appellants.

In conclusion, we affirm the trial court's judgment reversing CPSB's Order closing the airport.  We reverse the trial court's judgment declaring the Ordinance facially valid, and remand Noell's claims to the trial court regarding the constitutionality of the Ordinance.  We also reverse the portions of the judgment granting Homeowners declaratory and injunctive relief against the

---

[18] Appellants also rely on *Texas Electric Utility Construction., Ltd.v. Infrasource Underground Construction. Services.*, 12-09-00287-CV, 2010 WL 2638066 (Tex. App.—Tyler Jun. 30, 2010, pet. dism'd) to support its assertion that *Akin Gump* applies only to attorney malpractice cases.  In that case, the Tyler Court held it was "not at liberty to adopt a theory of recovery (i.e. Plaintiff's claim for attorney's fees as damages) that has not been enacted by the Legislature or adopted by the Texas Supreme Court . . . ."  *Id*. at *3.  The Supreme Court granted the plaintiff's petition for review in that case, but subsequently dismissed it pursuant to the parties' agreement.  Regardless, the plaintiff in that case relied upon the "tort of another" exception set out in the Second Restatement of Torts as its basis for recovery of the attorney's fees.  The Texarkana Court, noting the Texas Supreme Court did not adopt the "tort of another" exception in *Akin Gump*, refused to award attorney's fees under that theory. We agree with the Tyler Court to the extent that the "tort of another" exception has not been adopted by the Texas Supreme Court, and we do not rely on that exception here.  However, we disagree with the Tyler Court to the extent it relied on the American Rule alone as operating to bar the recovery of attorneys' fees as damages that were incurred in prior litigation.

City and CPSB and remand those claims to the trial court for further proceedings consistent with this opinion.

We modify Paragraph 16 of the injunction against CBA to require CBA to "comply with the terms of Paragraph B of the Note and Contract." We affirm the judgment in all other respects.

/Michael J. O'Neill/
MICHAEL J. O'NEILL
JUSTICE

111377F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DAVID W. NOELL, Appellant/Intervenor

V.

CITY OF CARROLLTON and
CARROLLTON PROPERTY
STANDARDS BOARD,
Appellants/Appellees'

V.

CROW-BILLINGSLEY AIR PARK, LTD,
HENRY BILLINGSLEY, and AIR PARK-
DALLAS ZONING COMMITTEE,
Appellants

V.

AIR PARK COMMON AREA
PRESERVATION ASSOCIATION, CHAD
MAISEL, AMY EKLUND, AND DALE
BURGDORF, Appellees

No. 05-11-01377-CV

On Appeal from the 219th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 219-00926-2009.
Opinion delivered by Justice O'Neill.
Justices Bridges and Lewis participating.

In accordance with this Court's opinion of this date, we **AFFIRM** the trial court's judgment vacating the Carrollton Property Standards Board's (CPSB) Order. We **REVERSE** the trial court's judgment declaring the City of Carrollton's Ordinance facially valid. We **REMAND** appellant David W. Noell's claims regarding the constitutionality of the Ordinance to the trial court for further proceedings consistent with this opinion.

We also **REVERSE** those portions of the judgment granting declaratory and injunctive relief to Air Park Common Area Preservation Association, Chad Maisal, Amy Eklund, and Dale Burgdorf against the City and the Carrollton Property Standards Board on their claims regarding the constitutionality of the Order and Ordinance and **REMAND** those claims to the trial court for further proceedings consistent with this opinion.

We **MODIFY** Paragraph 16 of the trial court's permanent injunction in favor of Air Park Common Area Preservation Association, Chad Maisal, Amy Eklund, and Dale Burgdorf against Crow-Billingsley Air Park, Ltd to read "Crow-Billingsley shall comply with the terms of Paragraph B of the Note Contract and the *Restrictions on Air-Park Dallas*."

As modified, the trial court's judgment against Crow-Billingsley Air Park, Ltd., Henry Billingsley, and Air Park-Dallas Zoning Committee is **AFFIRMED** in all other respects.

We **ORDER** that appellees Air Park Common Area Preservation Association, Chad Maisal, Amy Eklund, and Dale Burgdorf recover their costs of this appeal from appellants Crow-Billingsley Air Park, Ltd., Henry Billingsley, and Air Park Dallas Zoning Committee.

We **ORDER** that appellant David W. Noell recover the costs of his appeal from the City of Carrollton and the Carrollton Property Standards Board.

Judgment entered this 9th day of April, 2014.

/Michael J. O'Neill/
MICHAEL J. O'NEILL
JUSTICE

50