ACCEPTED
01-15-00251
FIRST COURT OF APPEALS
HOUSTON, TEXAS
9/18/2015 4:53:09 PM
CHRISTOPHER PRINE
CLERK

NO. 01-15-00251-CV

_____

IN THE COURT OF APPEALS
FOR THE FIRST DISTRICT OF TEXAS
HOUSTON, TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
9/18/2015 4:53:09 PM
CHRISTOPHER A. PRINE
Clerk

_____

In Re Texas State Silica Products Liability

_____

Appeal from the 333rd District Court of Harris County, Texas
Trial Court Cause No.: 2004-7000

_____

## APPELLANTS' REPLY BRIEF

_____

Michael B. Martin
SBN: 13094400
Maloney Martin, LLP
3401 Allen Parkway, Suite 100
Houston, Texas 77019
(713) 759-1600
(713) 759-6930 (fax)
mmartin@maloneymartinllp.com

**ATTORNEYS FOR APPELLANTS**

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

I.     This Court Has Proper Jurisdiction ................................................................1

II.    Appellants Have Standing to Bring this Constitutional Challenge and the
       Claims are Ripe..................................................................................................2

III.   Sections 90.004 and 90.010 Are Unconstitutionally Vague And  Preclude
       Appellants From Pursuing Their Valid Common Law  Claims......................5

       A.    Rules of Statutory Construction Preclude Consideration of Legislative
             or Attorney Debate. ................................................................................6

       B.    Sections 90.007 and 90.010 (b) Place the Trial Court in the Untenable
             Position of Interpreting Complicated Medical Terms and Tests Found
             in Medical Treatises. ...............................................................................8

       C.    Incorporation of Medical Treatises Into Law Make a Statute
             Intrinsically Vague. .................................................................................9

       D.    Appellees Ignore the Texas Workers Compensation Statute..............12

       E.    An Impairment Requirement was not the Law Prior to 2005.............14

       F.    The Ambiguity of § 90.010(f) Provides No Safe Harbor for
             Appellants...............................................................................................15

       G.    The Burden of Proof – § 90.004 (b) (2) Conflicts with § 90.004 (b) (3)
             Making Application Impossible. ...........................................................17

       H.    *In Re Global Santa Fe* and *In Re Silica Products Liability* Do Not
             Address the Constitutionality of **§§** 90.004 and 90.010......................20

       I.    Statutes Which Eliminate Common Law Rights Must Not Be Strictly
             Construed.................................................................................................21

IV.    There is No Basis to Overcome the Unconstitutionally Retroactive Application of **§§** 90.004, 90.010(f) and 90.010(d-1) to Appellants' Cases. 25

    A.    The Public Good is Not Served by the Retroactive Application of the Statute. ........................................................................27

    B.    Nature of the Prior Right Impaired by the Statute and Extent of the Impairment. ........................................................................30

PRAYER ........................................................................33

CERTIFICATE OF COMPLIANCE ........................................................................34

CERTIFICATE OF SERVICE ........................................................................34

# TABLE OF AUTHORITIES

## CASES

*Ackison v. Anchor Packing Co.*, Lawrence No. 05CA46, 2006 Ohio 7099, 2006 Ohio App. LEXIS 7047, at \*26-27 (Ohio Ct. App. 2006), *review granted*, 113 Ohio St. 3d 1465, 2007 Ohio 1722, 864 N.E.2d 652 (Ohio 2007) ..................25

*Baggett v. Bullitt,* 377 U.S. 360, 84 S.Ct. 1316 (1964) ..........................................17

*Baker Hughes, Inc. v. Keco R & D, Inc.,* 12 S.W. 3d 1, 4 n.12 (Tex. 1999)..........31

*Barshop v. Medina Underground Water Conservation District,* 925 S. W. 2d 618, 626 (Tex. 1996) ......................................................................................................4

*Borel v. Fiberboard Paper Products Corporation,* 493 F.2d 1076 (5th Cir.1973), *cert. den'd*, 419 U.S. 869, 95 S. Ct. 127, 42 L.Ed.2d 107 (1974) ............... 3, 22

*Burroughs Wellcome Co. v. Crye,* 907 S.W. 2d 497, 500 (Tex. 1995) ...................17

*Cash Am. Int'l Inc. v. Bennett,* 35 S.W. 3d 12, 16 (Tex. 2000)...............................21

*Childs v. Haussecker,* 974 S.W. 2d 31 (Tex. 1998)................................. 2, 14, 15, 22

*City of Mesquite v. Aladdin's Castle, Inc.*, 559 S.W.2d 92, 94 (Tex. Civ. App.--Dallas 1977), writ ref'd n.r.e by 570 S.W.2d 377 (Tex. 1978) (per curiam) .....5

*City of San Antonio v. Boerne,* 111 S. W. 3d 22, 25 (Tex. 2003)...........................23

*City of Tyler v. Likes,* 962 S.W. 2d 489, 502-03 (Tex. 1997)................................26

*City of Webster v. Signad, Inc.*, 682 S.W.2d 644, 646 (Tex. App.--Houston [1st Dist.] 1984, writ ref'd n.r.e.)................................................................ 5, 6, 20

*Collins v. County of El Paso,* 954 S.W. 2d 137 (Tex. App. – El Paso, 1997, no pet.)........................................................................................................12

*Comm'n for Lawyer Discipline v. Benton*, 980 S.W.2d 425, 437 (Tex. 1998)... 5, 16

*Daubert v. Merrill Dow Pharmaceuticals*, 509 U.S. 579 (1993) ...........................19

*De Cordova v. City of Galveston,* 4 Tex. 470, 480 (1849) .....................................25

*Dixon v. E.D. Bullard,* 138 S.W. 3d 373 (Tex. App. – Houston [14th Dist.] 2004)................................................................................................. 2, 22

*Douglas v. Cox Retirement Properties,* 302 P. 3d 739 (Ok. 2013) ........................25

*Dresser Industries, Inc. v. Lee,* 821 S.W. 2d 406 (Tex. App. – Tyler 1991) ..... 3, 22

*Dutcher v. Owens*, 647 S. W. 2d 948, 951 (Tex. 1983)...........................................21

*E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 559 (Tex.1995)....18

*Energy Gulf States, Inc. v. Summers,* 282 S.W. 3d 433, 443 (Tex. 2008).................6

*General Motors Corp. v. Romein,* 503 U.S. 181,191, 117 L. Ed. 2d 328, 112 S. Ct. 1105 (1992) ................................................................................................29

*Grayned v. City of Rockford*, 408 U.S. 104, 108-09, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972) ........................................................................... 8, 12

*Humble Sand & Gravel v. Gomez,* 146 S.W. 3d 170, 182 (Tex. 2004).............. 2, 22

*Ieropoli v. AC&S Corp.,* 842 A.2d 919, 577 Pa. 138 (Pa. 2004)............................25

*In Re Global Santa Fe,* 275 S.W. 3d 477, 489-90 (Tex. 2008) .................. 18, 19, 20

*In Re McAllen Medical Center, Inc.,* 275 S.W. 3d 458, 466-67 (Tex. 2008)..........28

*In Re Silica Products Liability,* 398 F. Supp. 2d 563 (S.D. Texas, 2005)........ 20, 28

*Insurance Co. of North America v. Meyers,* 411 S.W. 2d 710, 713 (Tex. 1966) ....17

*Landgraf v. USI Film Products,* 511 U.S. 244, 265 (1994)....................................25

*Lone Star Company v. Kelly,* 165 S.W.2d 446, 448 (Tex. 1942) ...........................16

*Mellinger v. City of Houston,* 3 S.W. 249, 253 (Tex. 1887)...................................31

*Mobil Oil Corp. v. Bailey,* 187 S.W.3d 265, 269 (Tex. App.—Beaumont
    2006, pet. denied) ........................................................................................ 18

*Neese v. Lyon,* No. 05-13-01597-CV (Tex. App -- Dallas, July 31, 2015) .............23

*Noel v. City of Carrolton,* 431 S.W. 3d 682, 698-99 (Tex. App. – Dallas,
    2014, no pet.)........................................................................................... 6, 12

*Otis Elevator Co. v. Wood,* 436 S.W.2d 324, 330 (Tex. 1968) ................................2

*Patel v. Tex. Dept. of Licensing,* No. 12-0657 (Tex. June 26, 2015) .......................3

*Pennington v. Singleton,* 606 S.W.2d 682, 689 (Tex. 1980) .............................. 6, 20

*Reed v. Department of Licensing & Regulation,* 820 S.W. 2d 1, 2 (Tex. App. –
    Austin 1991, no writ) .....................................................................................7

*Robinson v. Crown Cork & Seal Co., Inc.*, 335 S.W. 3d 126, 136 (Tex. 2010)
    .................................................................................................... passim

*Satterfield v. Satterfield,* 448 S.W. 2d 456, 459 (Tex. 1969) ................................21

*Smith v. Sewell*, 858 S.W. 2d 350, 354 (Tex. 1993) ..............................................21

*Sowell v. Dresser Industries, Inc.,*  866 S.W. 2d 803 (Tex. App. –
    Beaumont 1993, no writ).......................................................................... 2, 22

*Tex. Liquor Control Bd. v. Attic Club, Inc.* 457 S.W.2d 41, 45 (Tex. 1970) . 5, 6, 20

*Tex. Mutual Insurance v. Ruttinger,* 381 S.W. 3d 430, 453 (Tex. 2012) ....... 6, 7, 30

*Tex. Workers Comp Comm'n v. Garcia,* 893 S.W. 2d 504, 518 (Tex. 1995) ...........3

*Texas Lottery Commission v. First State Bank of DeQueen,* 325 S.W. 3d 628,
    637 (Tex. 2010) ..............................................................................................7

*Texas Water Rights Commission v. Wright,* 464 S.W. 2d 642, 648-649
    (Tex. 1971) ...................................................................................................26

*Transcontinental Insurance Co. v. Crump,* 330 S.W. 3d 211, 216 (Tex. 2010) .....17

*U.S. Silica v. Tompkins,* 92 S.W. 3d 605 (Tex. App. – Beaumont 2002)........... 2, 22

*Union Carbide v. Synatzske,* 438 S.W. 3d 39, 52 (Tex. 2014)....... 15, 22, 24, 27, 29

*University of Texas at Arlington v. Williams,* No. 13-0338 (Tex. 2015) (Justice
    Boyd, concurring)..........................................................................................21

*Viterbo v. Dow Chem Co.*, 826 F. 2d 420, 424 (5th Cir. 1987) ..............................17

*Wagner v. Anchor Packing Co.*, Lawrence No. 05CA47, 2006 Ohio 7097, 2006
    Ohio App. LEXIS 7050, at *11-12 (Ohio Ct. App. 2006)..............................25

*Williams v. American Optical Corp.*, 985 So.2d 23, 26-28, 33 (Fla. Dist. Ct. App.
    2008)..............................................................................................................25

*Wilson v. AC&S Corp.*, 169 Ohio App. 3d 720, 2006 Ohio 6704, 864 N.E.2d 682, 695 (Ohio Ct. App. 2006) *appeal dism'd*, 113 Ohio St. 3d 1457, 2007 Ohio 1787, 864 N.E.2d 645 (Ohio 2007)...................................................................25

*Youngblood v. U.S. Silica,* 130 S.W. 3d 461 (Tex. Spp. – Texarkana 2004) ..... 2, 22

## STATUTES

Tex. Civ. Prac. & Rem. Code **§** 74.351 ..................................................................14
Tex. Civ. Prac. & Rem. Code § 90.004 ........................................................... passim
Tex. Civ. Prac. & Rem. Code § 90.010 ........................................................... passim
Tex. Gov't Code Ann. § 311.023(2), (4) ...............................................................23
Tex. Labor Code § 408.1225 ..................................................................................13

## OTHER AUTHORITIES

Act of June 2, 2003, 78th Leg., R.S., Ch. 204, Section 10.11(a)(1)(3)(4)(5), 2003, Tex. Gen. Laws 847, 884-85 ...........................................................................28

Act of May 16, 2005, 79th Leg., R.S., ch. 97, Section 1, 2005, Tex. Gen. Laws 169 ...............................................................................................................27

AMA Guides to the Evaluation of Permanent Impairment 5th Edition ........... passim

AMA Guides to the Evaluation of Permanent Impairment 6th Edition ........... passim

NO. 01-15-00251-CV

_____

IN THE COURT OF APPEALS
FOR THE FIRST DISTRICT OF TEXAS
HOUSTON, TEXAS

_____

In Re Texas State Silica Products Liability

_____

Appeal from the 333rd District Court of Harris County, Texas
Trial Court Cause No.:  2004-7000

_____

**APPELLANTS' REPLY BRIEF**

_____

TO THE HONORABLE COURT OF APPEALS:

Appellants file this Reply Brief, and in support thereof, show the following:

**I.**    **This Court Has Proper Jurisdiction.**

Appellees challenged the jurisdiction of this Court by claiming that this was

an appeal from a permanent injunction.  The MDL Court expressed frustration with

Appellees' argument:

> I'm a little bothered by what might be below the surface here, counsel.
> We all know what was intended and we're trying to fix what was
> intended.  So let's all get up above the water line and make sure I
> understand what's happening here.  The goal was to have it be a

> temporary injunction and to have it sent up on appeal. A lot of time and money and effort and cooperation went into this.

(RR Supp. 14/3-11). Not only did the Appellees stipulate that this appeal was from a temporary injunction, the Court clarified that the question of a permanent injunction was never even before it. (RR Supp. 29-30). The MDL Court ultimately entered an order staying Appellants' cases and specifying that it had previously granted a temporary injunction. (CR 3rd Supp. 3). Consequently, this is an appeal from a temporary injunction in accordance with Tex. Civ. Prac. & Rem. Code § 51.014 (4) (2015). The Appellees' jurisdictional challenge is spurious.

## II. Appellants Have Standing to Bring this Constitutional Challenge and the Claims are Ripe.

Appellants' standing stems from their pre-2005 causes of action arising from valid diagnoses of silicosis based on the longstanding common law standard for determination of an injury. *See*, *Otis Elevator Co. v. Wood*, 436 S.W.2d 324, 330 (Tex. 1968). Silicosis product liability claims have long been litigated under Texas common law. *See, Humble Sand & Gravel v. Gomez,* 146 S.W. 3d 170, 182 (Tex. 2004); *Childs v. Haussecker,* 974 S.W. 2d 31 (Tex. 1998); *Youngblood v. U.S. Silica,* 130 S.W. 3d 461 (Tex. Spp. – Texarkana 2004); *Dixon v. E.D. Bullard,* 138 S.W. 3d 373 (Tex. App. – Houston [14th Dist.] 2004); *U.S. Silica v. Tompkins,* 92 S.W. 3d 605 (Tex. App. – Beaumont 2002); *Sowell v. Dresser Industries, Inc.,* 866 S.W. 2d 803 (Tex. App. – Beaumont 1993, no writ); *Dresser Industries, Inc. v.*

2

*Lee,* 821 S.W. 2d 406 (Tex. App. – Tyler 1991). Texas common law causes of action for occupational lung disease relating to strict product liability, negligence, warranty, and marketing causes of action date back to at least 1972. *Borel v. Fiberboard Paper Products Corporation,* 493 F.2d 1076 (5th Cir.1973), *cert. den'd*, 419 U.S. 869, 95 S. Ct. 127, 42 L.Ed.2d 107 (1974).

While the matter of ripeness and standing has been extensively briefed, it is important to recognize that Chapters 90.004 and 90.010 now require that Appellants' cases be dismissed, without ever having a chance to try their cases or seek remedy. Tex. Civ. Prac. & Rem. Code § 90.004 (d-1) (2015). "To challenge a statute, a plaintiff must suffer some actual or threatened restriction under the statute" and "contend that the statute unconstitutionally restricts the Plaintiff's rights." *Tex. Workers Comp Comm'n v. Garcia,* 893 S.W. 2d 504, 518 (Tex. 1995), *Patel v. Tex. Dept. of Licensing,* No. 12-0657 (Tex. June 26, 2015). Certainly, Appellants face "actual or threatened restriction" because their lawsuits will be summarily dismissed without due process. The entire basis for this appeal is that Appellants have been "unconstitutionally restricted" because they have been retroactively forced to submit a medical report based upon a statute so vague that the Appellants cannot determine how a compliant report is to be written. Appellants meet both prongs of the test, conferring their standing to bring this constitutional challenge and establishing issues ripe for review.

Appellees assert that until each Appellant submits an interlocutory medical report for review by the MDL Court, it is impossible to determine that Chapter 90 has any impact on them. Appellees' Brief at 23-24. For purposes of the Maloney Martin and Bradley Appellants, reports were submitted to the Court for review. (CR 1st Supp. V. 2, 541 -- V. 3 1846). For all of these Appellants, if their reports have to be re-written, Appellants cannot ascertain from Chapter 90 how that is to be done. Appellants are in a "Catch 22," faced with dismissal for failing to write an interlocutory medical report that is impossible to write because of a statute that is impossible to understand.

Facing certain dismissal, it is folly to suggest that Appellants' claims are speculative or not ripe. Even so, parties can challenge the constitutionality of a statute without attempting to comply with the statute if their rights are "threatened." *See*, *Barshop v. Medina Underground Water Conservation District,* 925 S. W. 2d 618, 626 (Tex. 1996) (landowner was not required to obtain a water permit before challenging aquifer regulations). Appellants face imminent dismissal of their cases. Chapters 90.004 and 90.010 unconstitutionally restrict their rights to proceed with their silicosis lawsuits, and they have shown the actual restriction.

Because of this appeal, the MDL Court stayed these cases, which was necessary to prevent dismissal under § 90.004 (d-1). (CR 3rd Supp., 3).

4

Appellants' silicosis cases present issues fit for judicial decision since Chapter 90 must be followed under threat of dismissal. These issues make Appellants' constitutional challenge ripe for judicial decision and the hardship to Appellants if court consideration is withheld is clear.

**III. Sections 90.004 and 90.010 Are Unconstitutionally Vague and Preclude Appellants From Pursuing Their Valid Common Law Claims.**

Chapter 90 is unconstitutionally vague as written because the law invites arbitrary and discriminatory enforcement by its lack of guidance to those charged with its enforcement. *See, Comm'n for Lawyer Discipline v. Benton*, 980 S.W.2d 425, 437 (Tex. 1998); *Tex. Liquor Control Bd. v. Attic Club, Inc.* 457 S.W.2d 41, 45 (Tex. 1970); *City of Webster v. Signad, Inc.*, 682 S.W.2d 644, 646 (Tex. App.-- Houston [1st Dist.] 1984, writ ref'd n.r.e.). Implicit in this constitutional safeguard is the idea that laws must have an understandable meaning and must provide legal standards that are capable of application for all citizens. *City of Mesquite v. Aladdin's Castle, Inc.*, 559 S.W.2d 92, 94 (Tex. Civ. App.--Dallas 1977), writ ref'd n.r.e by 570 S.W.2d 377 (Tex. 1978) (per curiam). Chapter 90 has no such understandable meaning because it incorporates medical treatises as law in such a way that the law is rendered vague.

**A.** **Rules of Statutory Construction Preclude Consideration of Legislative or Attorney Debate.**

The Appellees offer discussions from decades old legislative hearings, including committee testimony and floor debate to support their arguments. Appellees' Brief, 28-30. These discussions are immaterial to this appeal. *Energy Gulf States, Inc. v. Summers,* 282 S.W. 3d 433, 443 (Tex. 2008). The Legislature's intent is not determined through committee hearings, bill analyses or legislative debate, rather, the Legislative intent is determined exclusively by analyzing the language finally enacted in the statute. *Tex. Mutual Insurance v. Ruttinger,* 381 S.W. 3d 430, 453 (Tex. 2012); *Energy Gulf States* at 447.

Moreover, Appellees assert that the Plaintiffs' Steering Committee agreed, in 2006 advisory hearings, to follow the *AMA Guides to the Evaluation of Permanent Impairment* 6th Edition, ("the Guides") before the 6th Edition was ever published.[1] *See,* Appellees' Brief at 38. However, such agreement does not circumvent proper interpretation of the statute. Due process is violated and a law is invalid if persons of common intelligence are compelled to "guess" at a law's meaning and applicability. *Noel v. City of Carrolton,* 431 S.W. 3d 682, 698-99 (Tex. App. – Dallas, 2014, no pet.); *Attic Club* at 45*; Pennington v. Singleton,* 606 S.W.2d 682, 689 (Tex. 1980)*; Signad* at 646.

The Plaintiffs' Steering Committee agreed to follow the 6th Edition of the

---

[1] The 6th Edition was not published until 2008. (CR 1st Supp., V. 1, 288).

Guides in March 2006, but the 6th Edition would not even be published until 2008.[2] (CR 1st Supp. V.7, 3755). While Appellees argue this represents some type of admission, it actually illustrates that the parties were "guessing" as to what they believed the Guides would provide. *See,* Appellees' Brief at 38. The Appellants were forced to "guess" at the law's meaning and applicability because there is no guidance from § 90.004 (b) (2) regarding which edition of the Guides should apply. This forced exercise at guessing about enforcement of future unpublished editions of the Guides is exactly why the statute is unconstitutionally vague. *Id.*

The Legislature failed to specify the version of the Guides to be followed. Courts must consider this omission. *See, Texas Lottery Commission v. First State Bank of DeQueen,* 325 S.W. 3d 628, 637 (Tex. 2010). The Legislature's omission regarding which specific version of the Guides to follow is critical. The Guides are the basis under which impairment is established. However, when a statute is completely silent on an issue, the presumption is that "the silence is a careful, purposeful and deliberate choice." *Ruttinger* at 453; *Reed v. Department of Licensing & Regulation,* 820 S.W. 2d 1, 2 (Tex. App. – Austin 1991, no writ). By omitting any reference to a specific edition, the Legislature must have intended for

---

[2] As explained in the hearing, it was the interest of the Plaintiffs' Steering Committee to apply the most current scientific standards, in the spirit of *E.I Dupont v. Robinson.* The Plaintiffs' Steering Committee could never have anticipated 6th Edition would result in the wholesale revision of impairment categories and methodology. The Steering Committee's statements were never binding on any individual Appellant.

newer editions to be used when published.[3]  However, one can only guess at the reason for the omission. Unfortunately, this unilateral change in impairment criteria creates significant due process violations because the 6th Edition has totally different impairment criteria which were never legislatively adopted.  Impairment ratings changed without any notice to Appellants and without any deliberation by the Legislature or any other administrative agency.

**B.      Sections 90.007 and 90.010 (b) Place the Trial Court in the Untenable Position of Interpreting Complicated Medical Terms and Tests Found in Medical Treatises.**

A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.  *Grayned v. City of Rockford*, 408 U.S. 104, 108-09, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).  Appellees claim that Appellants are "ranting" about medical requirements for silicosis claimants and argue that Appellants simply "don't like" the statute.  They relegate Appellants' complaints about the statute to "type-o's."   However, the plain language of Chapter 90 requires a Court of law to interpret highly technical medical terms with conflicting footnote references, on an *ad hoc* basis, because the Court is required to determine whether a *"verified"* report is proper.  Tex. Civ. Prac. & Rem. Code § 90.010 (b) ("if the MDL pretrial Court determines that the

---

[3] Or perhaps not, no one really knows.

8

report . . . does not comply with Section 90.004"). Therefore, the Court is given the exclusive authority to determine whether a report is compliant. *Id.; see also,* § 90.007 (applying to cases filed after September 1, 2005). Under §§ 90.010 (b) and 90.007, a Plaintiff submits a verified report and the Defendants are then allowed to object to the report regarding whether the report complies with § 90.004, including the AMA Guides. (CR 1ˢᵗ Supp. V. 1, 432-39). This scheme forces an *ad hoc* debate of the Guides and/or the article in *Archives of Pathology* incorporated into § 90.004 (a) (3) (b) and how they are to be followed.

In order to determine whether the verified report has properly followed the Guides in accordance with § 90.004 (b)(2), the MDL Court is put in the untenable position of interpreting medical terminology to determine whether a physician's medical report is properly verified. Likewise, the continuing change of the Guides, the conflicting footnotes and references in the Guides, and the Guides' incorporation of many other complex medical periodicals make the statute nearly incomprehensible.

### C. Incorporation of Medical Treatises Into Law Make a Statute Intrinsically Vague.

The Appellees' Brief ignores the core problem with Chapter 90: the Legislature's decision to incorporate medical text as statutory law. As exemplified by the MDL Supplement 2 to the Court Recommended Checklist, the MDL Court attempted to interpret Table 5-12 of the Guides, and in doing so, was required to

solicit expert testimony just to understand the meaning of Table 5-12. (CR 1st Supp. V. 1, 280-283). For example, neither a court nor a lawyer can understand the undefined statutory term "Vo2 max" found in Table 5-12, without expert testimony. (CR 1st Supp. V.1, 280-83). The Court entertained testimony of experts, including Appellants' expert, George Delclos, Chairman of Environmental Medicine at the University of Texas School of Public Health, and then made an interpretation of how "Vo2 max" is to be applied under the statute. (CR 1st Supp. V. 1, 262-273, 280-283). The MDL Court then interpreted a requirement for exercise testing as "mandatory" because of a footnote to Table 5-12, even though the court acknowledged that such a test had not normally been performed by either Appellants or Appellees in the history of silicosis litigation. *Id.*

This MDL advisory order was then complicated by the fact that Table 5-12 was completely rewritten in the AMA Guides 6th Edition in 2008, and the "mandatory" footnote requiring exercise testing was deleted. *Compare,* Table 5-12 (5th Edition) (CR 1st Supp. V. 1, 283, 369) to Table 5-4 (CR 1st Supp. V.1, 314). The 6th Edition concluded that exercise testing was "infrequently needed in the investigation of pulmonary impairment" and is "most useful in addressing clinical situation where the individual's complaints are out of proportion to his or her static lung function test." (CR 1st Supp. V.1, 311). The 6th Edition only served to

reinforce the explanation by Dr. Delclos -- the Guides are "not a substitute for good clinical judgment." (CR 1st Supp. V.1, 272; 26/20 -- 27/3).

Nevertheless, the MDL Court was put in the position of interpreting complex medical terms, footnoted medical periodicals, and medical testing procedures. Consequently, the MDL Court concluded that the very invasive exercise test was a product of "mandatory language in the footnote" and a "requirement under the legislative scheme for silicosis claimants." (CR 1st Supp. V. 1, 281-82). Then, the statute was turned upside down when the 6th Edition of the Guides was published and the mandatory exercise testing footnote was removed. So, the question still remains, under § 90.004 (b) (2), does a silicosis claimant have to perform an exercise test? The answer is indeterminable.

As a medical treatise, the ever-changing Guides include articles and footnotes, and new editions which do not necessarily agree with each other. The treatises are intended to be used by physicians in their exercise of clinical judgment, not as language to be followed mandatorily by a Court. Nevertheless, under § 90.004 (b) (2), a compliant medical report must be "verified" by a physician as compliant with these Guides in accordance with 20 C.F.R. part 404.[4]

---

[4] The Appellees don't even discuss in their brief the incomprehensible reference to 20 C.F.R. part 404, which fails to even mention the AMA Guides, even though the statute declares the Guides are "reported" in the regulation. *See,* §90.004 (b) (2).

The slippery slope of Chapter 90's vagueness is similar to the analysis performed by the Court of Appeals in *Noel.* In *Noel,* an ordinance directed the owner of an airport to adopt rules "consistent" with the Texas Department of Transportation's "Model Rules and Regulations." *Noel* at 699. The Court found that "model rules" were only provided as a "guide" and "template" and were not intended to be adopted exactly as written. *Id.* at 700. Similarly, it is improper for the AMA Guides under § 90.004 (b)(2) or the 47 page medical article written and published in the *Archives of Pathology* incorporated into §90.004 (a) (3) (B), to be adopted "exactly as written." Nevertheless, by requiring a report to be "verified" pursuant to the Guides, the MDL Court was placed in the position of having to make *ad hoc* interpretations of the meaning of medical articles and the validity of pulmonary medical testing pursuant to the Guides. Such *ad hoc* interpretations are unconstitutional. *Noel* at 699; *Grayned* at 108-09.

**D.     Appellees Ignore the Texas Workers Compensation Statute.**

Where ambiguity arises, "the court must consider all laws in *pari materia* meaning the Court considers all laws related to the subject of the act." *Collins v. County of El Paso,* 954 S.W. 2d 137 (Tex. App. – El Paso, 1997, no pet.). Accordingly, discussion of how the Legislature applied the Guides in other statutes is both relevant and essential to understanding its application.

In their response, the Appellees ignore the critical comparison to the Texas Workers Compensation Act. This Act is very instructive. Under the Texas Workers Compensation scheme, the Commission is not left with the task of determining whether a physician's report is written in accordance with the AMA Guides. Instead, the Commission first requires a physician be certified as a "designated doctor." Tex. Labor Code § 408.1225 (2015). If a disagreement over impairment arises, instead of attempting to interpret the validity of a medical report under the Guides, the defending insurance carrier is afforded the opportunity to confirm the objective medical findings submitted by a claimant's physician through an independent medical exam. Tex. Labor Code § 408.122. If an impairment rating is still disputed, the Commission then selects a third doctor to resolve the issue. Tex. Labor Code § 408.125. At no time does the Commission attempt to interpret the Guides.

The Commission does not engage in any attempt to interpret the meaning of the Guides for a very good reason -- the Guides are a medical treatise intended to be utilized by physicians in their exercise of clinical judgment, not lawyers and judges. But, that is not the case under Chapter 90 because the MDL Court is charged with the responsibility of determining the validity of the physicians verification that his examination complies with the AMA Guides. *See,* §§ 90.010

(b) & 90.007.  Such a legislative scheme creates intrinsic ambiguity in attempting

to understand the meaning of the terms and subjects used in these medical articles.

Similarly, the Health Care Liability Act also requires a claimant to file an

interlocutory medical report to proceed with a claim against a health care provider.

*See,* Tex. Civ. Prac. & Rem. Code **§** 74.351 (2015).  However, the statute leaves

drafting of the medical report in such cases to a medical doctor's clinical judgment

and expertise, and does not force a court of law to interpret medical treatises or the

underlying conclusions of the medical report.  The Court is simply required to

assess whether the report represents "an objective good faith effort to comply with

the definition of an expert report."  Tex. Civ. Prac. & Rem. Code § 74.351 (l).

These comparisons illustrate that in past examples, the Legislature avoided

placing the judiciary in a position where it had to interpret medical tests, articles or

procedures.  These statutes create a process where reports can be objectively

verified without engaging in such interpretations. Unfortunately, Chapter 90

requires the opposite, creating a vague and incomprehensible statutory framework.

**E.    An Impairment Requirement was not the Law Prior to 2005.**

The Appellees incorrectly urge that the impairment requirement of "Class 2

or higher" under the AMA Guides is not a new requirement to bring suit for

silicosis. According to Appellees, the Supreme Court's holding in *Childs v.*

14

*Haussecker* established that impairment was requisite to bringing a cause of action for silicosis prior to 2005. *Childs v. Haussecker,* 974 S.W. 2d 31(Tex. 1998).

The Appellees' representation is wrong. *Childs* was a legal malpractice action and represents the common law standard for determining the statute of limitations in a silicosis case. *Id.* at 33. In *Childs,* the Court did not set forth a minimum impairment standard before a silicosis claim can accrue. *Id.* Further, the Court made no finding that a physician must make a particular determination as to a silicosis claimant's level of impairment before a cause of action accrues.[5] *Id.*

**F.    The Ambiguity of § 90.010(f) Provides No Safe Harbor for Appellants.**

The Appellees disingenuously and improperly apply § 90.010 to Appellants' constitutional claims. Before the "safe harbor" provision in § 90.010 can be invoked, the MDL Court must find that an Appellant possesses "unique or extraordinary physical or medical characteristics . . . that justify application of this section," which applies only in "exceptional and limited circumstances." Tex. Civ. Prac. & Rem. Code § 90.010 (h) (1) & (j). In the ten-year history of the MDL, this

---

[5] Appellees' entirely erroneous position on impairment is underscored by the Supreme Court's opinion in *Union Carbide v. Synatzske,* 438 S.W.3d 39, 58 (Tex. 2014). In *Synaske*, the Court specifically pointed out that the asbestos claim in that case would not have required pulmonary function testing to bring suit prior to September 1, 2005. Likewise, a classification of impairment was never a requisite to filing a silicosis action pre-2005.

15

provision was applied to **one** silicosis claimant.[6]  If § 90.010 applies to any of the Appellants, because the term "exceptional and limited circumstances" is not defined, Appellants cannot identify which rare Appellant might seek safe harbor. Subsection (j) of § 90.010 specifically instructs the MDL Court as follows:

> Subsections (d)(2) and (e) – (i) apply only in **exceptional and limited circumstances** in which the exposed person does not satisfy the medical criteria of Section 90.003 or 90.004 but can demonstrate meaningful asbestos-related or silica-related physical impairment that satisfies the requirements of Subsection (f). Subsections (d)(2) and (e) – (i) have **limited application** and **shall not** be used to negate the requirements of this chapter.

Tex. Civ. Prac. & Rem. Code § 90.010 (j) (emphasis added).  The Legislature clearly directs that this section shall have "limited application" and shall not be used to circumvent § 90.004. However, the term "exceptional and limited circumstances" is not defined by Chapter 90.  Again, the parties must guess at the meaning of this term.

The term "exceptional and limited circumstances" is vague and requires a completely subjective judgment as to its meaning.  It is similar to the terms "odorize," "embarrass," or "subversive persons" held to be unconstitutionally vague in other cases. *See, Lone Star Company v. Kelly,* 165 S.W.2d 446, 448 (Tex. 1942)*; Comm'n for Lawyer Discipline v. Benton,* 980 S.W. 2d 425 (Tex. 2005);

---

[6] The one Plaintiff was Pilar Olivas, who also challenged the constitutionality of the statute because, despite being Class 3 impaired, he could not meet the B read requirement of the statute. The MDL court opted to apply § 90.010 (j) and thwarted the appeal.

*Baggett v. Bullitt,* 377 U.S. 360, 84 S.Ct. 1316 (1964). Because of its vague terms, § 90.010 (j) is further proof that both §§ 90.004 and 90.010 are unconstitutionally vague. Moreover, it is highly unlikely that the Appellants are all "exceptional and limited circumstances" cases, but are typical silicosis cases.[7]

**G.     The Burden of Proof – § 90.004 (b) (2) Conflicts with § 90.004 (b) (3) Making Application Impossible.**

Section 90.004 (b) (3) changed the standard for legal causation for a silicosis case. The new causation standard requires the examining doctor to conclude that, "the exposed person's medical findings and impairment were not more probably the result of causes other than silica exposure." Tex. Civ. Prac. Rem. Code § 90.004 (b) (3). Prior to enactment of the statute, the causation standard was the common law standard of reasonable medical probability. *See, Insurance Co. of North America v. Meyers,* 411 S.W. 2d 710, 713 (Tex. 1966); *Transcontinental Insurance Co. v. Crump,* 330 S.W. 3d 211, 216 (Tex. 2010); *Burroughs Wellcome Co. v. Crye,* 907 S.W. 2d 497, 500 (Tex. 1995).

In fact, the new standard under § 90.004 (b) (3) represents a significant departure from Texas common law. The concept of requiring other medical causes to be rejected is viewed with disfavor. A medical causation expert need not "disprove or discredit every possible cause other than the one espoused by him."

---

[7] This section has a further limitation requiring that medical opinions are only offered by physicians who have a physician-patient relationship with the Appellant. *See*, Section 90.010 (f) (1) (B). That is not the case with Appellants' proffered reports.

*Crump* at 218 *quoting, Viterbo v. Dow Chem Co.*, 826 F. 2d 420, 424 (5th Cir. 1987). "Few expert opinions would be reliable if the rule were otherwise." *Id.*

Prior to Appellants' constitutional challenge, the Appellees steadfastly argued that this was a different burden of proof from Texas common law. (Russell: "Your honor, reasonable degree of medical probability and not more probably the result of causes other than silica exposure ***are not the same thing***."). (CR 1st Supp. V.1, 198-99; 46/20 – 47/8) (emphasis added). (Russell: "If the legislature wanted to say reasonable medical probability, those are not words they've never heard in Austin. They could have said that. These words were chosen with deliberate intent to effectuate this new approach. . .") (CR 1st Supp. V.1, 196; 44/13-18).

Appellees' argument has now changed. Appellees now assert that the standard in § 90.004 (b) (3) has always been a part of the reasonable medical probability standard and stands for good science. *See*, *Mobil Oil Corp. v. Bailey*, 187 S.W.3d 265, 269 (Tex. App.—Beaumont 2006, pet. denied); *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 559 (Tex.1995). The Appellees appear to now argue that the requirement of "not more probably the result of causes other than silica" has always been a part of a reasonable medical probability analysis.

Appellees' position is contradicted by *In Re Global Santa Fe,* which held that the impairment and burden of proof requirements of § 90.004 (b) (2) could not apply to Jones Act claimants because these requirements "imposed a higher standard of proof for causation than the federal standard applicable to Jones Act cases." *In Re Global Santa Fe* 275 S.W. 3d 477, 489-90 (Tex. 2008). Similar to Texas common law, the medical burden of proof in a Federal Jones Act case is reasonable medical probability. *See*, *Daubert v. Merrill Dow Pharmaceuticals*, 509 U.S. 579 (1993). Accordingly, the Supreme Court has already acknowledged that section 90.004 (b) (3) is a different burden of proof.

This new burden of proof in § 90.004 (b) (3), whatever it is and whatever it means, is contradicted by the AMA Guides, incorporated into the statute by § 90.004 (b) (2) which requires application of the "reasonable medical probability standard." The 5th and 6th Edition of the Guides provides the physician with a causation definition of reasonable medical probability. (CR 1st Supp. V.1, 297) and (CR 1st Supp. V.1, 343). Therefore, under § 90.004 (b) (2), a physician must perform his impairment evaluation "according to the American Medical Association Guides to the Evaluation of Permanent Impairment" based on "reasonable medical probability." However, under § 90.004 (b) (3), his impairment evaluation must also follow a different standard for causation -- not more probably the result of causes other than silica. As the statute is written, §

90.004 (b) (2) is conjunctive with § 90.004 (b) (3), requiring the physician to follow both standards (§§ b(2) and b(3) are conjunctively connected with the word "and"). Here again, "persons of common intelligence are forced to guess at the law's meaning and applicability" as to the conflicting and irreconcilable causation standards in the statute. *Attic Club* at 45; *Pennington* at 689; *Noel* at 698; *Signad* at 646.

### H. *In Re Global Santa Fe* and *In Re Silica Products Liability* Do Not Address the Constitutionality of §§ 90.004 and 90.010.

The Appellees rely heavily on opinions in two separate cases: *In Re Global Santa Fe* and *In Re Silica Products Liability.* However, Appellees' reliance on these cases is misplaced since these opinions do not consider any of the constitutional issues concerning **§** 90.004 and **§** 90.010. At issue in *In Re Global Santa Fe* is whether the Jones Act preempted Chapter 90. While the Supreme Court held that the general procedural framework of Chapter 90 is not preempted by the Jones Act, the minimal impairment provision for silica claims was preempted because it requires a higher standard of causation. *In Re Global,* 275 S.W 3d at 489. The Court did not address, nor was it asked to address, the constitutional vagueness of **§§** 90.004 and 90.010. Also, the Court did not consider the retroactive application of **§§** 90.004 and 90.010. None of the constitutional challenges raised by Appellants were before the Court in *In Re Global*.

Likewise, the other opinion Appellees heavily rely upon is *In Re Silica*

*Products Liability,* 398 F. Supp. 2d 563 (S.D. Texas, 2005). In that case, Chapter 90 was not before the Court. In fact, Chapter 90 had not even been enacted. None of the Appellants were before the Court. Therefore, none of the constitutional challenges raised by Appellants pertaining to **§§** 90.004 and 90.010 could be considered by the Court. These two cases have no precedential value with regard to the statutory construction of Chapter 90 on the issues of vagueness and retroactive application.

## I. Statutes Which Eliminate Common Law Rights Must Not Be Strictly Construed.

Texas has long followed the rule that statutes in derogation of the common law are not to be strictly construed. *Smith v. Sewell*, 858 S.W. 2d 350, 354 (Tex. 1993); *Dutcher v. Owens*, 647 S. W. 2d 948, 951 (Tex. 1983). Nevertheless, it is recognized that if a statute creates a liability unknown to the common law, or deprives a person of a common law right, the statute will be strictly construed in the sense that it will not be extended beyond its plain meaning or applied to cases not clearly within its purview. *Smith; Dutcher,* 647 S.W. 2d at 951; *Satterfield v. Satterfield,* 448 S.W. 2d 456, 459 (Tex. 1969). "Because statutes abrogating common law causes of action are disfavored, we will apply them only when there is a 'clear repugnance between the common law and statutory causes of action.'" *University of Texas at Arlington v. Williams,* No. 13-0338 (Tex. 2015) (Justice Boyd, concurring); *Cash Am. Int'l Inc. v. Bennett,* 35 S.W. 3d 12, 16 (Tex. 2000).

21

Each one of the Appellants had a cause of action for silicosis brought in common law that was abrogated by the enactment of § 90.004.

The Appellees suggest that silicosis is not a claim based in common law. Silicosis is one of the most mature torts known and was the subject of product liability claims for decades before passage of § 90.004. *Humble Sand & Gravel v. Gomez,* at 182; *Childs* at 31; *Youngblood* at 461; *Dixon* at 373; *U.S. Silica,* at 605; *Sowell* at 803: *Dresser Industries, Inc.* at 406; *Borel* at 1076. Silicosis claims have a deep history in Texas common law.

Moreover, strict construction of the plain meaning of §§ 90.004 (a) (3) (B) and 90.004 (b) (2) and (b) (3) will lead to absurd results. See, *Union Carbide v. Synatzske,* 438 S.W. 3d 39, 52 (Tex. 2014). Such absurd results are manifested by the following statutory applications:

1.  conflicting burdens of proof for medical causation between 90.004 (b) (2) and (3);

2.  conflicting and vague requirements for exercise testing between the 5th and 6th Guides;

3.  conflicting and changing definitions of impairment relating to Class 1, Class 2, Class 3 and Class 4, between the 5th and 6th Guides;

4.  conflicting standards for pulmonary function testing (Crapo? Hankinson? some other?) between the 5th and 6th Guides;

5. the inability to determine the correct size of a classic silicotic nodule in pathology, and

6. incomprehensible medical objections to physicians reports in which a Court is required to assess compliance with the Guides and other medical treatises.

A court interprets a statute to abrogate common law principles only when the statute's express terms or necessary implications clearly indicate such intent by the legislature. "We read the statute as a whole and interpret it to give effect to every part." *City of San Antonio v. Boerne,* 111 S. W. 3d 22, 25 (Tex. 2003). The court may consider among other things, the circumstances under which the statute was enacted, the common law, former statutory provisions, and laws on the same or similar subjects. *Neese v. Lyon,* No. 05-13-01597-CV (Tex. App -- Dallas, July 31, 2015); Tex. Gov't Code Ann. § 311.023(2), (4) (West 2013).

However, by reading the statute as a whole, the purpose of Chapter 90 becomes self-defeating. The statute is self-conflicting and provides little guidance on how to draft a report. Equally important, the medical requirements in § 90.003 relating to asbestos <u>do not</u> incorporate the Guides as law for determining impairment and are dramatically different from the silica standard. The vague and unpredictable medical criteria were only incorporated into the requirements for silica related claims. It appears that the silica portion of the statute was a hastily

drafted afterthought that has led to the destruction of silicosis as a common law tort in Texas.

**IV. There is No Basis to Overcome the Unconstitutionally Retroactive Application of §§ 90.004, 90.010(f) and 90.010(d-1) to Appellants' Cases.**

The prohibition against retroactive laws derives largely from the "principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place." *Landgraf v. USI Film Products,* 511 U.S. 244, 265 (1994). While not every retroactive law is unconstitutional, the heavy presumption against retroactive laws is deeply rooted in our jurisprudence. *Landgraf,* 511 U. S. at 265; *Robinson v. Crown Cork & Seal Co., Inc.*, 335 S.W. 3d 126, 136 (Tex. 2010). Constitutional provisions limiting retroactive legislation are applied to achieve two objectives: protecting settled expectations and preventing abuse of legislative power. *Robinson,* 335 S.W. 3d at 140. When laws are applied retroactively to common law claims, which is the case with Appellants' lawsuits, "different considerations" are present. *Union Carbide Corp. v. Synatzske,* 438 S.W. 3d 39, 55 (Tex. 2014) ("the retroactive effects of a statute on common law and statutory causes of action present different considerations").

The impact of **§§** 90.004 and 90.010 on the Appellants' common law causes

of action is monumental.[8] The application of **§§** 90.004 and 90.010 to Appellants'

prior common law claims goes beyond procedural or evidentiary considerations or

merely the regulation of a remedy. However, even a statute regulating a remedy

cannot be applied retroactively in certain circumstances. This has been long

recognized by Texas Courts as Chief Justice Hemphill noted in 1849:

> "unless the remedy be taken away altogether, or encumbered
> with conditions that would render it useless or impracticable to
> pursue it. Or, if the provisions regulating the remedy, be so
> unreasonable as to amount to a denial of a right, as, for
> instance, if a statute of limitations applied to existing causes,
> barred all remedy or did not afford a reasonable period for their
> prosecution; or if an attempt was made by law, either by
> implication or expressly, to revive causes of action already
> barred; such legislation would be retrospective within the intent
> of prohibition, and would therefore be wholly inoperative."

*De Cordova v. City of Galveston,* 4 Tex. 470, 480 (1849); *see also*, *Robinson v.*

*Crown Cork and Seal,* 335 S.W. 3d 126, 140 (Tex. 2010). The Supreme Court in

*Robinson* made clear that, "remedies are the life of rights. While our precedents

---

- [8] It should be noted that similarly drafted statutes have not fared well in other states which declared nearly identical provisions unconstitutional: *Williams v. American Optical Corp.*, 985 So.2d 23, 26-28, 33 (Fla. Dist. Ct. App. 2008). *Ackison v. Anchor Packing Co.*, Lawrence No. 05CA46, 2006 Ohio 7099, 2006 Ohio App. LEXIS 7047, at *26-27 (Ohio Ct. App. 2006), *review granted*, 113 Ohio St. 3d 1465, 2007 Ohio 1722, 864 N.E.2d 652 (Ohio 2007); *Wagner v. Anchor Packing Co.*, Lawrence No. 05CA47, 2006 Ohio 7097, 2006 Ohio App. LEXIS 7050, at *11-12 (Ohio Ct. App. 2006) *cf. Wilson v. AC&S Corp.*, 169 Ohio App. 3d 720, 2006 Ohio 6704, 864 N.E.2d 682, 695 (Ohio Ct. App. 2006) *appeal dism'd*, 113 Ohio St. 3d 1457, 2007 Ohio 1787, 864 N.E.2d 645 (Ohio 2007); *Ieropoli v. AC&S Corp.,* 842 A.2d 919, 577 Pa. 138 (Pa. 2004); *Douglas v. Cox Retirement Properties,* 302 P. 3d 739 (Ok. 2013).

recognize and apply the distinction [between a remedy and a right], they also recognize that the two terms are often inseparable." *Id.,* citing *Texas Water Rights Commission v. Wright,* 464 S.W. 2d 642, 648-649 (Tex. 1971). The Legislature may affect remedies for an accrued cause of action, so long as the remedy is not entirely taken away. *City of Tyler v. Likes,* 962 S.W. 2d 489, 502-03 (Tex. 1997). In Appellants' cases, their rights to pursue their claims for silicosis in the Texas court system are denied by **§§** 90.004, 90.010 (f), and 90.010 (d-1) which, undoubtedly, affects any remedy in these cases.

Whether the statute is substantive as Appellants show, or procedural, evidentiary or remedial as asserted by the Appellees, the fact remains that the changes brought about by the enactment of the statute have drastically impacted the prior rights of the Appellants, rendering the statute unconstitutionally retroactive. This is borne out when the three factors enumerated by the Supreme Court for determining whether a statute is unconstitutionally retroactive are applied in Appellants' cases. *Robinson*, 335 S.W. 3d at 145-46.

### A. The Public Good is Not Served by the Retroactive Application of the Statute.

The first element in determining whether a statute is impermissibly retroactive is the nature and strength of the public interest served by it, as evidenced by the Legislative findings. *Id.* In the Findings and Purpose for Chapter 90, the Legislature declared:

(n) It is the purpose of this Act to protect the right of people with impairing asbestos-related and silica-related injuries to pursue their claims for compensation in a fair and efficient manner through the Texas court system, while at the same time preventing scarce judicial and litigant resources from being misdirected by the claims of individuals who have been exposed to asbestos or silica but have no functional or physical impairment from asbestos-related or silica-related disease.

Act of May 16, 2005, 79th Leg., R.S., ch. 97, Section 1, 2005, Tex. Gen. Laws 169 (CR 1st Supp. V.2, 513).

Undoubtedly, the need to conserve the judicial resources of the state is clearly an important public interest. *Synatzske,* 438 S.W. 3d at 57. However, when the Legislative findings for Chapter 90 are examined, the findings primarily address asbestos litigation in Texas. *Id.* at Sec. 1(g). There are no findings by the Legislature that a crisis in *silicosis* litigation existed in Texas at the time **§** 90.004 was enacted. *Id.* (emphasis added)*.* As its only example regarding silica-related claims, the Legislature pointed to the large increase in silica-related lawsuits filed against an American supplier of industrial sand between the years 2001 and 2003. *Id.* However, the Legislative findings do not indicate that a large number of these lawsuits were filed in Texas, or that the sand supplier employed any Texans, or that the economic interests of Texas employers or employees were impacted in any way by silica-related lawsuits. *Id.*

The Appellees put forth the opinion of the Federal MDL Court to somehow illustrate an explosion in silicosis lawsuits in Texas. *In re Silica Product Liability Litigation*, 398 F. Supp. 2d 563 (S.D. Texas 2005). However, the silicosis claims addressed in the Federal MDL are primarily Mississippi lawsuits involving Mississippi residents. *Id.* The Appellants' cases are not involved. Additionally, the MDL opinion is not referred to or cited by the Legislature in its Chapter 90 findings. Thus, Appellees' reliance on this federal court opinion is misleading since the opinion does not show that the retroactive application of the statute to Appellants' claims serves a compelling public interest in the state of Texas.

It bears mentioning that the Legislature did not make the interlocutory medical report requirement retroactive in health care liability claims as it did in silicosis claims. *In Re McAllen Medical Center, Inc.,* 275 S.W. 3d 458, 466-67 (Tex. 2008). That Act is clearly based on public interest considerations in protecting access to affordable health care. *See,* Act of June 2, 2003, 78th Leg., R.S., Ch. 204, Section 10.11(a)(1)(3)(4)(5), 2003, Tex. Gen. Laws 847, 884-85. However, the Supreme Court pointed out that retroactively requiring interlocutory medical reports in health care liability cases might pose constitutional issues that prospective application does not. *Id.* Unlike the Legislative findings pertaining to the Health Care Liability Act, there are no findings in Chapter 90 to demonstrate a compelling public interest related to silicosis lawsuits in Texas. Yet, interlocutory

medical reports are retroactively required for silicosis claimants when no such retroactive requirement is placed on claimants under the Health Care Liability Act. "Retroactive legislation presents more problems of unfairness than those posed by prospective legislation, because it can deprive citizens of legitimate expectations and upset settled transactions." *General Motors Corp. v. Romein,* 503 U.S. 181,191, 117 L. Ed. 2d 328, 112 S. Ct. 1105 (1992).

## B. Nature of the Prior Right Impaired by the Statute and Extent of the Impairment.

A retroactive law is presumptively "unconstitutional without a compelling justification that does not greatly upset settled expectations." *Robinson,* 335 S.W. 3d at 147. Each of the Appellants had lawsuits based on valid silicosis diagnoses on file at the time Chapter 90 became law on September 1, 2005. Each Appellant had a pending suit and a settled expectation of pursuing his silicosis claim to trial under the common law in place at the time the suit was filed. See, *Synatzske,* 438 S.W. 3d at 59 (Compares *Robinson* where the statute was enacted after the Robinsons filed suit to *Synatzske* where no suit was pending for Mr. Emmites's asbestos exposure when Chapter 90 became effective). As the Supreme Court noted in *Synatzske,* the asbestosis claim would not have been subject to the pulmonary function testing requirement in Chapter 90 before September 1, 2005. *Id.* at 58. This is also entirely true in Appellants' silicosis cases. Appellants are now subject to the vague, ambiguous medical report requirements in **§§ 90.004** and

90.010, which have prevented their cases from going forward to trial, even though Appellants' cases were pending prior to September 1, 2005.

The enactment of **§** 90.010 (d-1) requiring dismissal of their claims has fatally impaired Appellants' rights. Legislative abolishment or abrogation of a common law cause of action is a course not lightly taken. *Texas Mutual Ins. Co. v. Ruttinger,* 381 S.W. 3d 430, n. 16 (Tex. 2012). The extent of the impairment of Appellants' rights caused by the retroactive dismissal of their lawsuits is total.

Appellees astonishingly assert that the statute is not retroactively unconstitutional since the Legislature afforded the Appellants a brief period of time to preserve their claims under the former law. The time period lasted from the enactment of the bill on September 1, 2005, until December 1, 2005. It is inconceivable and defies logic to contend that each of the Appellants' cases could have reached trial in that short span of time. These are complex cases, usually involving multiple defendants and requiring an average of two or three weeks per trial. Additionally, cases are in different stages of discovery. Also, the trial court's schedule must be considered. It is impossible that each of these claims could reach trial in such a short amount of time in order to avoid the unconstitutional retroactive application of the statute. The Appellees' assertion is entirely without merit.

The dismissal provision of § 90.010 (d-1) destroys Appellants' common law cases. Thus, the statutorily created inactive docket that Appellants' claims were placed into in 2005 is unconstitutionally retroactive as well as the statutorily created dismissal docket which ends their common law claims. "A plaintiff may have a settled expectation that, once wronged, he or she will be able to pursue a claim against his wrongdoer under the substantive laws as they existed at the time his or her cause of action accrued." *Mellinger v. City of Houston,* 3 S.W. 249, 253 (Tex. 1887).

Another constitutional concern brought about by § 90.010 (d-1) is the basic removal of any statute of limitations in these cases since they may be dismissed without prejudice. The Legislature cannot resurrect causes of action that have already been extinguished by retroactively lengthening the statute of limitations. *See, Baker Hughes, Inc. v. Keco R & D, Inc.,* 12 S.W. 3d 1, 4 n.12 (Tex. 1999). Appellees enthusiastically support **§** 90.010(d-1) even though the provision subjects them to possibly being sued indefinitely. This is because once Appellants' suits are dismissed; most will likely never be re-filed.[9] This is not because Appellants are not sick from silicosis; rather, it is due to the onerous, costly burden of attempting to comply with a vague and ambiguous statute and the fact many of the Appellees will, in all likelihood, no longer exist because of

---

[9] If they are re-filed, nothing precludes the Appellees from raising this constitutional challenge at that time. If they prevail on the statute, Appellants' claims are extinguished for all time.

corporate dissolutions. The dismissal provision as applied retroactively to Appellants' cases "singles out groups or individuals for special reward or punishment" making it unconstitutional. *Robinson,* at 145. Appellants' prior rights are effectively extinguished by the statute. Therefore, this retroactive statute greatly benefits the Appellees and substantially punishes the Appellants, rendering it unconstitutional.

## PRAYER

Appellants respectfully request **§§** 90.004 and 90.010 be declared unconstitutional and that application of the statute to Appellants' cases be voided and for such other relief this Court may deem proper.

Respectfully submitted,

**MALONEY ★ MARTIN, L.L.P.**

*/s/Mike Martin*
Mike Martin (TBN: 13094400)
mmartin@maloneymartinllp.com
3401 Allen Parkway, Suite 100
Houston, Texas 77019
(713) 759-1600
(713) 759-6930 (Facsimile)

ATTORNEYS FOR APPELLANTS

## CERTIFICATE OF COMPLIANCE

I  certify that this document was prepared by a computer using Microsoft Word, and that according to that program's word-count function, the sections covered by Tex. R. App. P. 9.4(i)(1) contain a total of 7,073 words.  I further certify that the body text is in 14 point font and the footnote text is in 12 point font.

*/s/Mike Martin*
Mike Martin

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was forwarded to all counsel of record in accordance with the Texas Rules of Appellate Procedure, by either hand-delivery, facsimile, electronic service or certified mail, return receipt requested, on this the 18th day of September, 2015.

*/s/Mike Martin*
Mike Martin